This action, begun on 17 July, 1922, was referred to Mr. F. E. Winslow. The referee, having heard the same, filed his report, setting out in full his findings of fact and conclusions of law. Exceptions were filed to the report by both plaintiffs and defendants. The action was then heard upon the report and these exceptions. From the judgment rendered plaintiff, W. M. Wiggins, and defendants, Farmers banking Trust Company, George A. Holderness and John Cheshire, upon exceptions thereto duly noted, appealed to the Supreme Court.
The essential facts involved in these appeals, are as follows:
1. On 7 January, 1920, a paper-writing, in form an agricultural lien and deed of trust, executed by John Cheshire and wife, parties of the first part, to Farmers Banking Trust Company, party of the second part, and George A. Holderness, party of the third part, was duly recorded in Edgecombe County.
2. By virtue of this paper, Farmers Banking Trust Company acquired a lien for advancements, not to exceed $7,500, upon all the crops to be made by John Cheshire on the "Ballyhack Farm" in Edgecombe County, during the year 1920; the indebtedness for said advancements was evidenced by a note for $7,500, executed by John Cheshire, payable to Farmers Banking Trust Company and due on 1 November, *Page 221 
1920. For the purpose of further securing the payment of said note, parties of the first part conveyed to George A. Holderness, party of the third part, the following described real and personal property, to wit: (1) All crops of every kind grown by John Cheshire on said farm during the year 1920; (2) All mules and horses, one cotton gin and equipment, and all farming implements on said farm and used in the cultivation of the same; (3) The "Ballyhack Farm" containing 824 acres; and (4) One vacant lot in the town of Tarboro, known as the "Home Place" of John Cheshire. The said paper-writing provided that "if John Cheshire shall fail or neglect to pay the note for $7,500, when due, and payable, it shall be lawful for and the duty of the said party of the third part" after advertisement, to sell the said property, real and personal, to the highest bidder for cash, and to convey the same to the purchaser; and out of the proceeds of the sale, he shall pay said note for $7,500 and interest, and the costs and expenses of the sale, "first retaining out of the proceeds of the sale the usual commission of 5 per cent for making said sale" and the surplus, if any, he shall pay to John Cheshire.
The following clause appears in said paper-writing: "In making the aforesaid sale, it is distinctly understood and agreed by and between all the parties hereto that the said George A. Holderness, trustee, shall first offer for sale all crops then on hand and unsold; he shall next sell all team and all personal property on said farm; he shall next sell the lot of the said John Cheshire in the town of Tarboro; he shall next sell the undivided one-half interest of John Cheshire in and to the farm, hereinbefore fully described."
3. In the spring of 1920, after the registration of the said paper-writing, John Cheshire began the erection of a residence on the vacant lot in the town of Tarboro, known as the "Home Place," at an expense, approximately, of $20,000; the claims and liens of the plaintiffs, involved in this action, are for labor done, and material furnished in the erection and construction of the said residence upon this lot.
4. The several plaintiffs herein acquired liens for labor done or material furnished, on said residence and lot, upon claims filed, as of the dates and for the amounts as follows:
Name Claim Filed Date of Lien Amount
1. Joe E. Harris 16 Feb. 1921 6 Apr. 1920 $355.06
2. Pender Hdw. Co. 16 Feb. 1921 31 May 1920 264.81
3. F. G. Davis 16 Feb. 1921 5 Aug. 1920 340.19
4. Johnson Wiggins 16 Feb. 1921 16 Aug. 1920 438.62
5. W. M. Wiggins 30 Mar. 1921 21 Aug. 1920 1,961.95
W. M. Wiggins 30 Mar. 1921 30 Mar. 1921 112.41
W. M. Wiggins 30 Mar. 1921 30 Mar. 1921 19.26 *Page 222 
Each of the liens of plaintiffs, as aforesaid, was duly and regularly recorded by the clerk of the Superior Court of Edgecombe County, on the lien docket in his office, and judgments, thereafter obtained on each claim, declaring the same a lien on said residence and lot, in favor of each plaintiff, respectively, and against the defendant, John Cheshire, were duly and regularly docketed in said office.
5. On 8 June, 1920, there was recorded in the office of the register of deeds of Edgecombe County, a mortgage deed, executed by John Cheshire and wife, conveying to Edgecombe Homestead Loan Association to secure the sum of $7,000, for money borrowed, the lot known as the "Home Place." On 8 December, 1920, a mortgage deed from John Cheshire and wife, conveying the said lot to said Edgecombe Homestead Loan Association, to secure an additional loan of $3,000, was recorded in the office of the register of deeds of Edgecombe County.
6. On 19 October, 1920, there was recorded in the office of the register of deeds of Edgecombe County, a paper-writing, in form an agricultural lien and deed of trust, executed by John Cheshire and wife, conveying to George A. Holderness, trustee, to secure payment of note for $2,500 to Farmers Banking Trust Company, the same real and personal property as that described in the paper-writing recorded on 7 January, 1920; this paper-writing contains the same provisions with respect to the sale of said property, upon default in payment of indebtedness secured thereby as are contained in said paper-writing recorded 7 January, 1920; the indebtedness secured therein, together with the paper-writing was thereafter for value but after maturity transferred and assigned to T. P. Cheshire, who is now and has at all times since been the owner thereof, by virtue of such transfer and assignment.
7. Prior to 15 April, 1922, the farm conveyed by John Cheshire and wife to George A. Holderness, trustee, in the paper-writing recorded on 7 January, 1920, was sold under a mortgage, executed and recorded prior to 7 January, 1920, and out of the proceeds of said sale, the sum of $5,782.22 was paid by the mortgagee in said mortgage to Farmers Banking Trust Company and credited on the note for $7,500, secured in the paper-writing recorded on 7 January, 1920. Said mortgage was prior to the claims of all parties to this action, either plaintiffs or defendants upon said farm.
8. On 15 April, 1922, George A. Holderness, trustee, under the power of sale contained in the paper-writing recorded on 7 January, 1920, sold the personal property, conveyed to him by said paper-writing, for $800; and also on said date sold and conveyed the "Home Place," upon which the residence had been erected, for $10,975; after paying the costs and expenses of the sale, and taxes and assessments upon the said Home Place, and retaining commissions of 5 per cent on the *Page 223 
gross amount of the sale, the said George A. Holderness, trustee, paid the balance due on the note to Farmers Banking Trust Company, to wit: $2,435.63; and the surplus, to wit: $7,538.53, he paid to Edgecombe Homestead Loan Association, upon the indebtedness of John Cheshire to said association, secured in the mortgages recorded on 8 June, 1920, and on 8 December, 1920.
9. The purchaser at said sale of the personal property sold by the trustee was T. P. Cheshire, who was the last and highest bidder in sum of $800; at date of sale, the said T. P. Cheshire was the owner of the indebtedness and paper securing same, executed by John Cheshire and recorded 19 October, 1920; the trustee did not collect from said T. P. Cheshire the amount of his bid, but upon demand of said T. P. Cheshire consented that same should be credited upon the indebtedness secured by the junior mortgage.
10. The cotton, tobacco, and peanuts made on the "Ballyhack Farm" during the year 1920, upon which Farmers Banking Trust Company had lien, and which were conveyed to George A. Holderness, trustee, by the paper-writing recorded on 7 January, 1920, were sold by John Cheshire, and proceeds deposited to the credit of John Cheshire, subject to his check, in the Farmers Banking Trust Company. Neither the Farmers Banking Trust Company nor George A. Holderness, trustee, took or demanded possession of said crops, or the proceeds of the sale of the same; George A. Holderness on 7 January, 1920, and at all times since was and is now chairman of the board of directors of Farmers Banking Trust Company, and both he and said company had actual knowledge of the erection of said residence upon the lot known as the "Home Place," of the sale of the said crops by John Cheshire, and of the deposit by him of the proceeds of said sale with said company; said John Cheshire withdrew by checks the amounts so deposited by him, and no part of the proceeds of the sale of said crops was applied to the payment of or as credit upon the note held by the said Farmers Banking 
Trust Company. John Cheshire was the owner, on 1 November, 1920, of crops on hand, grown upon the "Ballyhack Farm" during 1920, free from claims of tenants, of the value of $3,100, which he after that date sold, depositing the proceeds to his credit with Farmers Banking Trust Company, from which he withdrew same by his checks.
11. All of said crops had been sold, and the proceeds, deposited to his credit with Farmers Banking Trust Company, withdrawn by John Cheshire before notice of claim of lien on the Home Place was filed by plaintiffs or any one of them; plaintiff, W. M. Wiggins, began to perform labor and furnish material, upon which his claim of lien for $1,961.95 was founded, on 21 August, 1920, and completed same on *Page 224 
26 January, 1921; on 15 April, 1922, the date of the sale of the personal property by George A. Holderness, trustee, to T. P. Cheshire, the said Holderness and Farmers Banking Trust Company had constructive and actual notice of each and all the liens and judgments of plaintiffs herein; on said date none of the crops made on "Ballyhack Farm" during 1920, were on hand and unsold.
Upon the facts found by the referee, as set out in his report, and as modified and amended, by consent, at the hearing before his Honor, JudgeDevin, it was ordered, considered, and adjudged (1) that plaintiff, Joe E. Harris, recover of defendants, John Cheshire, George A. Holderness and Edgecombe Homestead Loan Association, the sum of $355.06, interest and cost; (2) that plaintiff, Pender Hardware Company, recover of said defendants the sum of $264.81, interest and costs. No exception was taken to the judgment as affecting these two plaintiffs.
It was further ordered, considered and adjudged that plaintiffs, Johnson Wiggins and F. G. Davis recover of John Cheshire, George A. Holderness and Farmers Banking Trust Company, the sum of $800, with interest from 9 January, 1922, and that said sum be paid to them in the order of their priorities, in payment of or as credit upon their judgments, respectively. To this part of the judgment, defendants, John Cheshire, George A. Holderness and Farmers Banking Trust Company excepted and assign same as error.
Plaintiff W. M. Wiggins excepted to and assigns as error the clause in the judgment as follows: "It appearing to the court that the amount of the recovery will be exhausted by the above mentioned claims and recoveries, it is ordered and adjudged that plaintiff, W. M. Wiggins, recover nothing."
Plaintiff, W. M. Wiggins, further excepted to and assigns as error his Honor's failure to sustain plaintiff's exception to conclusion of law No. 4, of the referee, which is as follows:
"Plaintiffs are not entitled to recover anything from the Farmers Banking Trust Company or from George A. Holderness, trustee, for the value of any crops raised in 1920, by John Cheshire on `Ballyhack Farm' embraced within the mortgage from Cheshire to the bank and George A. Holderness, trustee." This was plaintiff's exception No. 1.
Plaintiff, W. M. Wiggins, further excepted to and assigns as error, the refusal of his Honor to sustain plaintiff's exception to the conclusion of law No. 5 of the referee, which is as follows: "The plaintiffs are not entitled to recover anything from W. A. Hart or S. S. Nash for cotton raised by John Cheshire on the Ballyhack Farm in 1920, and received by these defendants. Plaintiffs had no lien on said cotton when defendants Hart and Nash received the same. Though the plaintiff might have required the bank to seize this cotton while it was in reach, *Page 225 
either by formal demand or by legal proceedings, they did not do so at all and an unenforced equity is not a lien." This is plaintiff's exception No. 2.
Plaintiff, W. M. Wiggins, further excepted to and assigns as error, the refusal of his Honor to sustain plaintiff's exception to conclusion of law No. 8 of the referee, which is as follows: "The plaintiffs are not entitled to recover anything from George A. Holderness, trustee, and the Farmers Banking Trust Company on account of the failure of the trustee to first sell the crops before selling the `Home Place' under the bank's paper. The plaintiffs are seeking damages for wrongful application of the proceeds of the sale of the Home Place and thereby recognized the validity of the sale of the Home Place and are estopped to assert that the sale was invalid." This is plaintiff's exception No. 3.
Plaintiff, W. M. Wiggins, further excepted to and assigns as error the refusal of his Honor to sustain plaintiff's exception to conclusion of law No. 10 of the referee, which is as follows: "Plaintiffs are in the position of unsatisfied execution creditors, having liens on John Cheshire's Home Place, some being superior to his homestead right, and they stand in John Cheshire's place with respect to other persons claiming interest in said land; but they are not purchasers for value in the legal sense." This is plaintiff's exception No. 4.
Plaintiff, W. M. Wiggins, excepted to and assigns as error the refusal of his Honor to sustain plaintiff's exception to conclusion of law No. 11 of the referee, which was as follows: "The plaintiffs are not entitled to recover anything on account of commissions retained by George A. Holderness, trustee, in the foreclosure of his instrument, since under his contract with the mortgagor, John Cheshire, he was authorized to retain five per cent commissions on the proceeds of the sale, and there is no evidence that this provision was inserted in the mortgages through undue influence, fraud, oppression, or as a cloak for usury, nor is the amount retained by such trustee so large as to furnish in itself evidence of oppression." This was plaintiff's exception No. 5.
Defendants, George A. Holderness, trustee, the Edgecombe Homestead 
Loan Association, John Cheshire and Farmers Banking Trust Company excepted to and assign as error, the sustaining by his Honor of plaintiff's exception to conclusion of law No. 12 of the referee, which is as follows: "The plaintiffs are not entitled to recover anything of George A. Holderness, trustee, on account of $800 for which the personal property was sold under his instrument. Plaintiffs had no lien on said property and took no steps to enforce this equity to have the same applied in exoneration of the Home Place, making no demand that the same be so applied, until this suit was brought, the trustee having paid the same to T. P. Cheshire, who held a junior mortgage on *Page 226 
said personal property, on the said T. P. Cheshire's demand before this suit was brought." This was defendant's first and only material exception.
The only parties to this action, now complaining of the judgment of his Honor, are plaintiff, W. M. Wiggins, who contends that defendants, Farmers Banking Trust Company and George A. Holderness, trustee, should be required to account for the crops sold and disposed of by John Cheshire and for commissions retained by the trustee, before applying the proceeds of the sale of the Home Place to the satisfaction of the balance due on the note for $7,500, and defendants, Farmers Banking Trust Company, George A. Holderness, trustee, and John Cheshire who contend that there was error in holding that the amount bid for the personal property should have been collected by the trustee and applied to the payment of the judgments and liens of plaintiffs, Johnson Wiggins, and F. G. Davis. These contentions are presented by the assignments of error and are discussed in the opinion below.
It was adjudged that plaintiff, Joe E. Harris, recover of defendants, John Cheshire, George A. Holderness and Edgecombe Homestead Loan Association the sum of $355.06, with interest from 2 September, 1920, and that plaintiff, Pender Hardware Company recover of said defendants the sum of $264.81, with interest from 1 January, 1921. George A. Holderness, trustee, from the proceeds of the sale of the Home Place, paid to Edgecombe Homestead Loan Association, its note executed by John Cheshire and secured in mortgage recorded on 8 June, 1920. At the date of the sale, these two plaintiffs had docketed liens on said "Home Place," effective 6 April, 1920, and 31 May, 1920, respectively. These liens were prior to said recorded mortgage, and manifestly the judgments secured by these liens had priority over the mortgage to the association, and should have been paid before the application of the surplus remaining in the hands of the trustee, after fully satisfying the note of Farmers Banking Trust Company, taxes, assessments and costs, to the indebtedness secured in the mortgage to the association. There was no exception to the judgment as affecting these claims.
On 15 April, 1922, the date of the foreclosure sale by George A. Holderness, trustee, the Farmers Bank Trust Company, and said trustee, by *Page 227 
virtue of the paper-writing recorded on 7 January, 1920, had first lien on the "Home Place," and also on the "personal property" sold by the trustee, upon default by John Cheshire in the payment of the note for $7,500 secured in said paper-writing. Plaintiffs, other than Joe E. Harris and Pender Hardware Company, whose claims have been satisfied by judgment against Edgecombe Homestead Loan Association and the trustee, had liens only on the Home Place in the following order of priority, to wit: (1) F. G. Davis, claim filed 16 February, 1921, lien as of 5 August, 1920, for $340.19, with interest from 30 November, 1920, and costs; (2) Johnson Wiggins, claim filed 16 February, 1921, lien as of 16 August, 1920, for $438.62, with interest from 29 August, 1920, and costs; (3) W. M. Wiggins, claim filed 30 March, 1921, lien as of 21 August, 1920, for $1,961.95, with interest from 19 January, 1921, and costs.
T. P. Cheshire, as assignee and transferee of the note for $2,500, secured in mortgage from John Cheshire and wife to George A. Holderness, trustee, recorded on 19 October, 1920, was postponed as to his right to proceeds from sale of said Home Place to these liens. He was not entitled to any part of the surplus left in the hands of the trustee, until these prior liens had been fully paid and satisfied. Although the notices of claim, upon which these liens were acquired were subsequent to the registration of his mortgage, the liens related back to the commencement of the work and the furnishing of materials for the construction of the residence, by these respective claimants, and as established by the judgments these liens were all prior to his mortgage. McAdams v. Trust Co.,167 N.C. 494.
The Farmers Banking Trust Company and George A. Holderness, trustee, had two sources from which to derive money for the payment of the balance due on its debt: (1) The Home Place, (2) The personal property. These lien creditors had only one source — the "Home Place." The trustee, having sold both the personal property and the Home Place, should have applied the proceeds of the sale of the personal property as a payment on the note held by the Farmers Banking Trust Company, and thus have increased the surplus in his hands arising from the sale of the Home Place, after the payment therefrom of all claims prior to the claims of these lien creditors. Upon the facts found by the referee, this would have left in his hands, applicable to these claims, in the order of their priority, as among themselves, eight hundred dollars. It is true that these lien creditors had no lien upon the personal property sold by the trustee, but they had an equity recognized in our jurisprudence and uniformly enforced by the courts. "Where one person has a clear right to resort to two funds and another person has a *Page 228 
right to resort to but one of them, the latter may compel the former, as double creditor, to exhaust the fund on which the latter, as single creditor has no claim." Eaton on Equity, p. 513.
"It is well settled that if one party has a lien upon two pieces of property and the other has a lien on one piece only, the latter has the right in equity to compel the former to resort to the other piece of property in the first instance if this is necessary to satisfy the claims of both parties. There is no difficulty in applying this principle when the property is in the possession of the mortgagor." Harrington v. Furr,172 N.C. 610.
At the date of the sale, while the trustee had in his possession the proceeds of the sale of both the Home Place and the personal property, he had notice, both actual and constructive, of the facts upon which the equity of the lien creditors arise. The payment of the $800 to T. P. Cheshire, rather than to Farmers Banking Trust Company, in reduction of its note, was a denial of the rights of these creditors. There is no error in his Honor's judgment that these creditors, in the order of their priority, recover of the trustee the sum of $800, with interest from the date of the sale. Nor is there error upon the facts appearing to the court, in adjudging that W. M. Wiggins recover no part of said $800. The right of these creditors to recover judgment against Farmers Banking Trust Company for the money which the trustee failed to collect and pay upon its note, is not clear, but the Farmers Banking Trust Company does not assign error in this respect. It joins the trustee in a common defense to the claim of the lien creditors and seems content to share with the trustee the results of the litigation.
Plaintiff, W. M. Wiggins, contends, and by his assignment of error presents to this Court for review, upon appeal, his exceptions to the refusal of his Honor to hold, that Farmers Banking Trust Company and George A. Holderness, trustee, should have seized and taken into possession the crops, grown by John Cheshire on the "Ballyhack Farm" during 1920, which were subject to lien held by the said company, and which were conveyed to the trustee, by the paper-writing, recorded on 7 January, 1920, as security for the payment of the note for $7,500, and that such security should have been exhausted before the sale of the personal property or the Home Place, conveyed to the trustee in said paper-writing as additional or further security for said note.
This contention was not made until after the said crops had been sold and the proceeds disposed of by John Cheshire, the mortgagor. The said crops were never in the possession of the said company or the trustee, and therefore the principle successfully invoked by the lien creditors, F. G. Davis and Johnson Wiggins, with respect to the personal *Page 229 
property, seized and sold by the trustee, and the proceeds of the sale thereof does not apply to this contention. W. M. Wiggins at no time had any lien upon or legal claim to said crops. At most, he had an equity, at the maturity of the note held by the Farmers Banking Trust Company, and while his lien, upon the Home Place, which attached thereto upon the commencement of the labor and the furnishing of material upon the residence, was maturing. This equity, if it existed at all, to compel the company and the trustee, to take possession of the said crops, on or after 1 November, 1920, was not a lien, but an equity to be administered. "The doctrine of marshalling is not determined by the situation when the successive securities are taken, but is to be determined at the time the marshalling is invoked. If defendant (who was insisting upon the equity) had any right to have the securities marshalled, he should have begun proceedings before the sale." Harrington v. Furr, 172 N.C. 610. "The equity (of marshalling) is a personal one against the debtor, and does not bind the paramount creditor, nor the debtor's alienee for value." Adams Equity, star page 272.
"Though the proposition, that a creditor of two funds will be restrained from proceeding against the doubly charged fund, till he has exhausted the other, is often repeated in the decisions, it has been acted on in general, only where both funds were actually within the control of the court." Adams Equity, note on page 272, note by Bispham.
Plaintiff says that his right to recover in this action is not dependent upon the doctrine of marshalling; that he is seeking to recover of the banking company and the trustee for that they should be required to account for the value of the security, which they released, or failed to seize and apply, as a primary security, to the payment of the note due the company. It has been held that if a senior creditor, with notice of the junior creditor's lien, releases or discharges the security not available to his junior, he is accountable for the actual value of the property in the adjustment of the equities of the parties with regard to the property on which both have liens. 18 R. C. L., 465, and cases cited. This principle, however, does not aid appellant here, for neither the Banking Trust Company nor the trustee had notice, actual or constructive, of the lien of the appellant, until 30 March, 1921, when notice of the claim of lien was filed. Appellant by filing his claim of lien, acquired a lien as of 21 August, 1920, but this does not suffice as notice to the company or the trustee prior to the date on which notice of claim was filed. The filing of notice of claim of lien could have no other effect than to give claimant priority from the date on which the work was begun or the first material was furnished, over subsequent liens on the property, subject to the liens. All the crops made by John *Page 230 
Cheshire, during 1920, on the "Ballyhack Farm" had been sold prior to 30 March, 1921, the date on which the first constructive notice of the claim of W. M. Wiggins of lien on the Home Place was given to the company or the trustee. Knowledge that John Cheshire was having a residence erected upon his lot was not notice that W. M. Wiggins was performing labor or furnishing material in the construction of said residence or that Cheshire was not paying him. Conceding that the company and the trustee, in contemplation of law, released the crops to which they were entitled as security, neither had notice of the claim of W. M. Wiggins, subsequently asserted, and the principle here invoked by W. M. Wiggins upon which to hold the company and the trustee liable for such release, fails to establish such liability on account of lack of such notice.
Plaintiff, W. M. Wiggins, further contends that his right of recovery in this action is not dependent upon any general principle or doctrine of equity, but is to be determined by the terms of the paper-writing under which the company and the trustee acquired lien upon and title to the crops and Home Place, involved in this contention. It is true that as between John Cheshire, as debtor, and the company as creditor, and the trustee, under the express terms of the paper-writing, the trustee was required to sell first the crops. A third party, who subsequently acquired, for value, title to or lien upon any of the property conveyed, as security, in said paper-writing, it may be conceded, also acquired the right to insist, for his protection, upon the sale of the several properties, in the order as required by John Cheshire. If W. M. Wiggins, by virtue of his lien had the right to require the trustee to sell the crops first, he should have made demand upon the trustee and the company while the crops or their proceeds were available for sale or application to the company's debt. Neither the company nor the trustee had notice, by demand or otherwise, of any fact by virtue of which appellant acquired or claimed any rights with respect to the sale of the crops or the application of their proceeds to the debt of the company. The principle applicable is thus stated in Bispham's Equity, section 341: "When the paramount creditor has been guilty of some negligence or default, as where he has put one of the funds beyond his own reach, with full knowledge that his debt cannot be satisfied out of the other fund without injury to the interests of third persons, he may be restrained from coming in upon the second fund."
We cannot hold that the failure of the bank and the trustee to foreclose the lien and deed of trust immediately upon the maturity of the note of John Cheshire, was negligence such as to subject them to liability to Cheshire or to any one claiming under him, for any loss which was *Page 231 
thereafter sustained, certainly, in the absence of any demand to foreclose or of any notice of the existence of any facts upon which rights of third parties had arisen or might thereafter arise, in or to any property covered by the lien or deed of trust.
Nor is the assignment of error with respect to the amount retained by the trustee as commission sustained. This amount was fixed by contract between the parties to the paper-writing and no facts appear upon which we can hold that the amount retained was excessive. Banking Co. v. Leach,169 N.C. 706.
Both appeals in this case are determined by the existence or lack of existence of notice.
In defendant's appeal, the trustee had notice, both actual and constructive, at the date of the sale of the personal property, of the rights of appellees, as determined upon the uncontroverted facts, and in accordance with a well-settled principle of equity. With knowledge of such rights, arising from such notice, he applied the proceeds of the said sale, in disregard of the rights of appellees. His Honor held that the trustee was liable to appellees for the misapplication of the proceeds of the sale, of the personal property. This holding is approved by us, as a correct application of a well-settled principle of equity to the facts found by the referee.
In plaintiff's appeal, neither the Farmers Banking Trust Company, nor the trustee had notice, either actual or constructive, until after the crops had been sold and the proceeds disposed of by the debtor, of the rights or claims of appellant. They cannot be held liable to one of whose rights or claims they had no knowledge or notice from which knowledge can be imputed to them. As between themselves, the debtor and creditor could waive rights and liabilities arising out of the terms of the paper-writing, by which the debtor had secured the creditor. The creditor cannot be held liable to a third party, who, although he had rights subsequently acquired which might be or were affected by the waiver, gave no notice actual or constructive to the creditor or trustee of such rights or claims and made no demand for the protection by the creditor or the trustee of such rights or claims as he had or might thereafter have.
His Honor held that appellees are not liable, in any aspect of the case, to appellant with respect to the crops or the proceeds of same. This holding we approve, as sustained upon principle and by authoritative text-writers, and decisions of the courts.
Upon both appeals, the judgment is
Affirmed. *Page 232