RURAL PLUMBING AND HEATING, INC. v. HOPE DALE REALTY, INC.;
CHARLES C. CAMERON, TRUSTEE: CAMERON-BROWN COMPANY;
COMMERCIAL STANDARD TITLE INSURANCE COMPANY; CHAT-
HAM BRICK AND TILE COMPANY, INC.; CAROLINA BUILDERS
CORPORATION; STANDARD CINDER BLOCK COMPANY, INC.; CAL-
VIN RAY; BORO WOOD PRODUCTS, INC.; C. RUSSELL GOODWIN,
T/A CAPITOL INSULATING COMPANY; J. N. BARNES; NORTH CAR-
OLINA PRODUCTS CORPORATION; NORTH CAROLINA EQUIPMENT
COMPANY; READY MIXED CONCRETE COMPANY; JASPER RAY
McLEAN AND WIFE, RUBY W. McLEAN; BOYT LEE, JR., AND WIFE,
JEAN LEE; LACY J. BYRD AND WIFE, LOIS E. BYRD; EDWARD O.
CASHWELL AND WIFE, JOYCE W. CASHWELL; WALLACE BRANT-
LEY AND WIFE, THELMA A. BRANTLEY; BEN T. POE AND WIFE,
GLENNIE POE; ELLIOTT C. CREECH AND WIFE, HILDA S. CREECH;
BILLY ALLEN GLOVER AND WIFE, KATHERINE WILSON GLOVER;
JAMES MELVIN RADFORD AND WIFE, GLADYS K. RADFORD;
SELBY D. WATSON AND WIFE, FRANCES H. WATSON; AR-
THUR S. FORBES AND DORA L. FORBES; JOHN C. BRUTON AND
WIFE, SHIRLEY D. BRUTON; WILLIAM KENNETH MINGIS, JR., AND
WIFE, CELESTE FERRELL MINGIS; DONALD LEE HOLLAND AND
WIFE, JOANNE FRYE HOLLAND; JAMES F. BEASLEY AND WIFE, VIO-
LET BEASLEY; BEN L. EDWARDS AND WIFE, JUANITA M. ED-
WARDS; BOBBY W. BRANSON AND WIFE, BETTY H. BRANSON;
WYATT L. GAY AND WIFE, ELEANOR J. GAY; ARTHUR L. WOOD AND
WIFE, OLIVE K. WOOD; CHARLES E. STEPHENSON AND WIFE, EDNA
M. STEPHENSON; DAVID W. CURRIN AND WIFE, LILLIE H. CURRIN;
LEWIS FLOYD WILKINS AND WIFE, EVELYN A. WILKINS; FRANK

641

HEATING CO. *v.* REALTY CO.

F. BAGWELL AND WIFE, SHIRLEY G. BAGWELL; DAVID TUPLIN AND WIFE, MARTHA C. TUPLIN; LEWIS CLEMENT AND WIFE, COLEEN M. CLEMENT; CHARLIE E. EARLY AND WIFE, ELLA MAE EARLY.

(Filed 24 February, 1965.)

**1. Appeal and Error §§ 19, 22—**

An assignment of error that the evidence is insufficient to support the findings of fact, with a sole exception to the judgment and without any exception to any of the findings, does not present for review the findings of fact or the sufficiency of the evidence to support them.

**2. Appeal and Error § 21—**

A general exception to the judgment presents for review only whether the findings of fact support the conclusions of law and the judgment and whether error of law appears on the face of the record proper.

**3. Appeal and Error § 49—**

Where there are no exceptions to the findings of fact, the findings are presumed to be supported by competent evidence and are binding on appeal.

**4. Laborers' and Materialmen's Liens § 3—**

Where a laborer or material furnisher files notice of lien in the county in which the realty is situate for work done and materials furnished by him in building and improving the property under contract with the owner, and files such lien within six months after the completion of the work and commences action to enforce the lien within six months of the filing of the notice, the lien relates back to the time when claimant began performance of the work, and takes precedence over deeds and deeds of trust registered after the beginning of the work, or liens created by the owner subsequent thereto. G.S. 44-1.

**5. Same—**

The findings of fact in this case *held* to support judgment that plaintiff plumbing and heating contractor recover from the owner the unpaid balance due it for installing plumbing and heating systems in designated houses sold by the owner after the commencement of the work, and that the unpaid balance as to each house, respectively, constituted a lien superior to the claims of the purchasers or liens thereafter created.

**6. Same; Receivers § 10—**

Where the owner of a development is put into receivership prior to judgment establishing the lien of a material furnisher for work in the construction of houses on the land, the materialman's claim does not constitute a lien against the property remaining in the hands of the owner, although the lien attaches to property sold by the owner prior to receivership.

**7. Payment § 3—**

The debtor has the right at the time of payment to specify the debt or debts to which the payment should be applied; if the debtor fails to direct application the creditor may do so; if the parties fail to direct application the duty to do so devolves upon the court.

**8. Same; Laborers' and Materialmen's Liens § 3—**

The general rule as to the application of payment is ordinarily applicable to payments made by an owner or contractor to a laborer or material furnisher, subject to the qualification that if payment is made from funds provided by the owner or purchaser of the property for the purpose of discharging the indebtedness against a specified part of the property, the laborer or materialman must apply the amount to the discharge of such indebtedness if he has knowledge of the source and purpose of the payment.

**9. Same— Purchasers failing to obtain lien release held not entitled to object to application of payment by subcontractor.**

The owner of a subdivision contracted for the installation of plumbing and heating systems in each of a number of houses at a stipulated price per house, and thereafter sold the houses to individual purchasers. In this action to enforce the heating contractor's liens, the owner and the heating contractor agreed that payments theretofore made by the owner should be applied to discharge the entire indebtedness as to some houses, a partial payment in a stipulated amount as to others, and no payments as to still others, leaving the lien as to them for the full contract price. There was no allegation or finding or averment in the agreed statement of account that any purchaser paid any sum to discharge the lien against his individual property. *Held:* The individual purchasers may not object to the application of payment.

APPEAL by "the defendants, property owners of the 26 lots, the holder of the deeds of trust, the trustee, and the title insurance company" from *Bundy, J.,* February 1964 Assigned Civil Session of WAKE. Docketed and argued as Case No. 454, Fall Term, 1964.

Midland Realty Company, Inc., hereafter called Midland, is a North Carolina corporation organized in July 1955, with its principal place of business in Wake County, North Carolina, and its business was developing land and constructing houses for the purpose of sale. Its principal stockholder and its president is W. M. Newsom. It had two other stockholders: Newsom's wife and William Dunn, Jr. In November 1958 W. M. Newsom organized Hope Dale Realty Company, Inc., hereafter called Hope Dale, a North Carolina corporation, with the same owners and officers, merely for income tax purposes to split the profits of Midland.

On 30 October 1959 W. M. Newsom, as principal stockholder of Midland and Hope Dale, instituted a separate action against each corporation in the superior court of Wake County alleging that each corporation was insolvent, and praying that a receiver be appointed for each corporation, pursuant to G.S. 55-125. Each corporation filed an answer admitting the material allegations of the complaint. On 12 November 1959 the resident judge of Wake County entered an order in each case appointing Wright T. Dixon, Jr., receiver of each corporation to liquidate its business. Each order enjoined all creditors of each

corporation from interfering with the assets of each corporation or with the receiver in the discharge of his duties. The receiver filed his report on 27 November 1961, and an addendum thereto on 3 January 1962. Exceptions were filed thereto. On 2 February 1962 Clark, J., presiding in Wake County superior court, entered an order affirming the receiver's report, "subject only to the determination of a jury upon the issues submitted by the court as appears in the record of this case." On 10 February 1962 Clark, J., entered another order in respect to the issues to be submitted to a jury. Exceptions were filed to this order.

The instant action was instituted on 4 November 1959 in the superior court of Wake County by Rural Plumbing and Heating, Inc., to have and recover judgment against Hope Dale, according to the terms of entire and indivisible contracts entered into by and between it and Hope Dale, for labor performed and materials furnished by it in connection with the installation of plumbing and heating systems in 26 houses erected on 26 lots owned by Hope Dale, and sold by Hope Dale to certain persons, and to enforce a laborers' and materialmen's lien on each of the said 26 houses and lots. On 4 September and 8 September 1959, and within six months after the labor done and the materials furnished by it in installing the plumbing and heating systems in each of the 26 houses, it filed a notice of labor done and materials furnished in each of the 26 houses in the office of the clerk of the superior court of Wake County, which were properly recorded. It named as defendants Hope Dale, the purchasers of the 26 houses and lots, and other lien claimants, the holder of the deed of trust on each of the 26 houses and lots, the trustee named in the deeds of trust, and the title insurance company which insured the lien of the holder of the note secured by a deed of trust on each of the 26 houses and lots.

All the defendants filed a joint answer in which they deny the material allegations of the complaint, except they admit plaintiff properly filed a laborers' and materialmen's lien, as alleged in its complaint, and that Hope Dale conveyed 26 lots and the houses thereon to certain individuals, as alleged in the complaint.

On 3 December 1962, Judge Clark, presiding over the superior court of Wake County, entered what is termed an order of reference in the instant case, and in 27 other cases on the docket of the superior court of Wake County. Judge Clark's order recites that there was duly calendared before him for hearing the actions of *Newsom v. Midland* and *Newsom v. Hope Dale*, which corporations are in receivership, and that it appeared to the court that, in addition to these two actions, the docket of the clerk of the superior court of Wake County had a large number of related cases, all of which arose as a result of the transactions of Midland and Hope Dale, prior to the appointment of a re-

ceiver for the two insolvent corporations; that the issues in some of these cases on the clerk's docket have been determined by the receiver, and others have not. Judge Clark then found the following facts, which we summarize: The receiver upon his appointment conducted hearings to determine the validity and priority of claims against the insolvent corporations, at which time sworn testimony was given and transcribed. Thereafter, the receiver filed reports on the claims of various creditors against Midland and Hope Dale. His report, in addition to relating to claims and priorities for work done and materials furnished to properties owned by the insolvent corporations, also applied to claims and priorities for work done and materials furnished on houses on lots which were sold by the two insolvent corporations prior to his appointment as receiver. That the lots previously sold never came into the receiver's hands and the receiver reports that he is without power to rule upon liens on real property which had been sold prior to his appointment, and consequently his findings relate only to the status of the claims within the framework of his receivership. This court has previously ruled on the receiver's reports, and that certain exceptions have been taken to his findings and the issues framed for submission to the jury. The receiver has been in the process of liquidating the properties of the two insolvent corporations, and it is expected that a final determination of the complete assets of the receivership will be immediately forthcoming. The testimony necessary to try all of the above-entitled actions in which Midland and Hope Dale are parties would involve the taking and hearing of long and complicated accounts, and would be in great part repetition, requiring a multiplicity of actions and creating delay, unnecessary work and expense. A consolidation of all the actions is not prejudicial to the rights of the parties. Whereupon, he ordered and decreed as follows, in substance: The issues heretofore framed in *Newsom v. Midland* and *Newsom v. Hope Dale* shall be submitted to a jury, at such time as the other issues resulting from this order are ready for determination. The court in its discretion is hereby consolidating for the purpose of further action and trial all of the above-entitled cases for complete determination and final judgment. Wright T. Dixon, Jr., is appointed referee in each of the above-entitled cases, except in the actions of *Newsom v. Midland* and *Newsom v. Hope Dale*, in which he is presently the duly appointed receiver. His appointment as referee is not to be construed as a part of his duties as receiver in the actions of *Newsom v. Midland* and *Newsom v. Hope Dale*. The referee is directed to set hearings, take evidence, and make findings to be submitted to the court, and he is allowed to make use of the transcripts of testimony, books or papers of the receivership, as well as testimony presented for determining the facts in all of said

cases as a basis for his findings of fact. So far as the record shows, no exception was taken to Judge Clark's order.

The referee filed his report in the superior court of Wake County on 15 October 1963. His report recites, in substance, that the parties stipulated Hope Dale conveyed to the individual defendants the lots on the dates set out in Exhibit "A," which is attached to his report and made a part thereof. Exhibit "A" shows the lots conveyed were numbered 4, 35, 37, 38, 42, 43, 46, 72, 73, 74, 75, 76, 79, 80, 81, 83, 94, 95, 104, 106, 113, 114, 115, 121, 124, and 125, the names of the purchasers of each lot and the house situate thereon, the recorded date of the purchase, the recorded date of plaintiff's notice of lien, and the date the lien relates back to.

## FINDINGS OF FACT BY REFEREE

"1.  That in December of 1958 Hope Dale Realty Company, Inc. made a contract with Rural Plumbing and Heating, Inc. to install plumbing and heating in houses to be constructed on lots owned by it in Hope Dale Subdivision upon the same terms as was being done for Midland Realty Company, Inc.: $1145 per house. [The original record on file in the office of the clerk of the Supreme Court shows that the entire report of the referee was typewritten, and that in finding of fact No. 1 the word "furnaces" was typed, and that the word "furnaces" has been stricken out with a pen or pencil, and above it are the words "plumbing and heating" written in pen or pencil.]

"2.  Rural Plumbing and Heating, Inc. was instructed to continue its method of operation in furnishing and installing plumbing and heating without regard to the existence of the Hope Dale Realty Company, Inc.

"3.  That prior to August 3, 1959, the amounts due by the two corporations to the plaintiff, Rural Plumbing and Heating, Inc., were paid by one corporation or the other on the total amount due by both corporations and without regard to allocation.

"4.  That during the period of construction Hope Dale Realty Company, Inc., on occasions, ran a payroll account for personnel constructing houses on the lots in said subdivision.

"5.  That the parties hereto on August 3, 1959, agreed to allocation of payments by the two corporations as appears in Exhibit 'B' attached hereto."

Exhibit "B" attached to the referee's report is as follows:

HEATING CO. *v.* REALTY CO.

"AGREED STATEMENT OF ACCOUNT BETWEEN
RURAL PLUMBING AND HEATING, INC.
(hereinafter referred to as RURAL)
and
"HOPE DALE REALTY CO., INC. and MID-
LAND REALTY CO., INC. (hereinafter
jointly referred to as OWNERS)

"WHEREAS, RURAL has heretofore furnished certain labor and materials for the plumbing and heating systems in certain residential buildings constructed by the OWNERS in Hope Dale Subdivision, St. Mary's Township, Wake County; sixty-seven of said buildings having been completed and sold, and eleven of said buildings now being under construction; and

"WHEREAS, certain payments for said labor and materials have been made by said OWNERS to RURAL without specific designation as to which buildings said payments should be applied to; and

"WHEREAS, the parties hereto desire to set forth the application of the aforesaid payments and to set forth the status of the unpaid accounts due to RURAL:

"NOW, THEREFORE, in consideration of these premises, and in further consideration of the covenants hereinafter set forth, the parties hereto agree as follows:

"1. [Omitted because it is not relevant here.]

"2. That all of the charges of RURAL for the labor and materials furnished in the construction of the thirty houses first completed in said subdivision, shall be marked as paid and satisfied in full, except for the charges against Lot No. 36 (this being job No. 6299 on the records of RURAL), upon which there is now due a balance of $509.65, with interest at the rate of 6% per annum from the 11th day of February, 1959.

"3. That no payments have been made to RURAL on account of the plumbing and heating systems in the buildings constructed on the following lots and that there is now due to RURAL the sum of $1145.00 with interest at the rate of 6% per annum from the date set forth beside each lot number, all of said lots being owned by HOPE DALE REALTY COMPANY, INC.:

| Lot No. | Date of Completion of Work |
|---------|----------------------------|
| 74 | 6 March 1959 |
| 35 | 7 March 1959 |

| | |
|---|---|
| 38 | 9 March 1959 |
| 79 | 12 March 1959 |
| 80 | 12 March 1959 |
| 81 | 12 March 1959 |
| 72 | 24 March 1959 |
| 73 | 24 March 1959 |
| 76 | 31 March 1959 |
| 75 | 31 March 1959 |
| 46 | 2 April 1959 |
| 83 | 4 April 1959 |
| 37 | 6 April 1959 |
| 42 | 8 April 1959 |
| 43 | 22 April 1959 |
| 4 | 20 June 1959 |

"4. That payments in the amount of $700.00 per lot have been made to RURAL on account of the plumbing and heating systems in the buildings constructed on the following lots and that there is now due to RURAL the sum of $445.00 with interest at the rate of 6% per annum from the date set forth beside each lot number:

| Lot No. | Owner | Date of Completion of work by RURAL |
|---|---|---|
| 104 | Hope Dale Realty Co., Inc. | 16 June 1959 |
| 106 | Hope Dale Realty Co., Inc. | 16 June 1959 |
| 121 | Hope Dale Realty Co., Inc. | 16 June 1959 |
| 86 | Hope Dale Realty Co., Inc. | 23 June 1959 |
| 113 | Hope Dale Realty Co., Inc. | 23 June 1959 |
| 115 | Hope Dale Realty Co., Inc. | 23 June 1959 |
| 122 | Hope Dale Realty Co., Inc. | 23 June 1959 |
| 125 | Hope Dale Realty Co., Inc. | 23 June 1959 |
| 34 | Midland Realty Co., Inc. | 29 June 1959 |
| 95 | Hope Dale Realty Co., Inc. | 1 July 1959 |
| 33 | Midland Realty Co., Inc. | 2 July 1959 |
| 85 | Midland Realty Co., Inc. | 2 July 1959 |
| 107 | Hope Dale Realty Co., Inc. | 3 July 1959 |
| 119 | Hope Dale Realty Co., Inc. | 3 July 1959 |
| 94 | Hope Dale Realty Co., Inc. | 6 July 1959 |
| 124 | Hope Dale Realty Co., Inc. | 6 July 1959 |
| 114 | Hope Dale Realty Co., Inc. | 8 July 1959 |

| 120 | Hope Dale Realty Co., Inc. | 8 July 1959 |
| 118 | Hope Dale Realty Co., Inc. | 10 July 1959 |
| 84 | Hope Dale Realty Co., Inc. | 17 July 1959 |
| 117 | Midland Realty Co., Inc. | 17 July 1959 |

"5, 6, 7, and 8. [Omitted because they are not relevant here.]"

### CONCLUSIONS OF LAW BY REFEREE

"1. That the labor done and materials furnished on the lots set up in Exhibit 'A' were done so under contract between Rural Plumbing and Heating, Inc. and Hope Dale Realty Company, Inc.

"2. That the agreement to allocation of payments to specific lots, Exhibit 'B', was proper and is binding on the Hope Dale Realty Company, Inc., and on the individual defendants through Hope Dale Realty Company, Inc.

"3. That upon filing the liens as set up in Exhibit 'A' the claim of the plaintiff relates back to the date the material was furnished or work done on the individual said lots as appears in Exhibit 'A'."

Whereupon, the referee's decision was that plaintiff have and recover from each of the 26 purchasers of the 26 houses and lots from Hope Dale the amount with interest set forth particularly as to each purchaser, *e.g.*, Lot No. 4; purchaser, Jasper Ray McLean and wife, Ruby W. McLean; judgment against property $1,145, with interest from 9 March 1959.

Exceptions to the referee's report were filed by plaintiff, Rural Plumbing and Heating, Inc., and by "the defendants, present property owners, the holder of the deeds of trust, the trustee thereunder, and the title insurance company."

These exceptions came on to be heard by Bundy, J., at the February 1964 Assigned Civil Session of Wake, who entered the following judgment:

"This cause coming on to be heard before the undersigned Judge upon exceptions filed by the plaintiff and defendants to the Referee's Report herein, and being heard, upon review of the record of the case, and arguments of counsel; and the Court being of the opinion that there should be certain modifications in the Findings of Fact, as follows:

"1. That in Finding of Fact No. 1 the word 'furnaces' be deleted and 'plumbing and heating systems' be inserted in lieu thereof.

"The Court finds the following additional facts:

"1.   The work of installing plumbing and heating systems was done by the plaintiff in accordance with the contracts.

"2.   The liens were proper and filed in time.

"3.   The action was commenced in time.

"The Court being of the opinion, for the sake of clarity, that the Referee's decision be modified by striking out the first two lines, and inserting in lieu thereof the following, 'that the plaintiff have and recover of the defendant Hope Dale Realty Company, Inc. the amount set forth in the third column below and that each said amount is a valid and subsisting lien against each of the lots listed below opposite the amount in the third column, which said lien is prior and superior to the claims of all other parties to this action.'

"Except as above modified the Referee's Report as to Findings of Fact, Conclusions of Law and Decision is affirmed."

From the judgment "the defendants, property owners of the 26 lots, the holder of the deeds of trust, the trustee, and the title insurance company" appeal.

*Bunn, Hatch, Little & Bunn by James C. Little and E. Richard Jones, Jr., and Herman Wolff, Jr., for "the defendants, property owners of the 26 lots, the holder of the deeds of trust, the trustee, and the title insurance company," appellants.*

*Lassiter, Leager, Walker & Banks by James H. Walker for plaintiff appellee.*

PARKER, J.  Appellants' first assignment of error is that Judge Bundy "erred in signing the judgment affirming the report of the referee for the reason that the evidence is insufficient to support the findings of fact and that the findings of fact are insufficient to support the conclusions of law contained in said report. (Exception #1, R. p. 121.)"

Appellants have no exception to any specific finding of fact they wish to challenge. In fact, they have no exception to any of the findings of fact. In the appeal entries, they object to the judgment and except to the signing and rendition thereof, and after the appeal entries appears their Exception #1. Their appeal entries were filed on 24 February 1964, and the judgment from which the appeal was taken was entered on 12 February 1964. Their assignment of error "that the evidence is insufficient to support the findings of fact" does not present for review the findings of fact or the sufficiency of the evidence to sup-

port them, for three reasons: (1) This part of the assignment of error is not based on an exception or exceptions duly noted, and an assignment of error must be based on an exception, Strong's N. C. Index, Vol. 1, Appeal and Error, § 19; (2) an exception to the judgment does not present for review the findings of fact or the sufficiency of the evidence to support them, *Equipment Co. v. Johnson, Comr. of Revenue,* 261 N.C. 269, 134 S.E. 2d 327; *Merrell v. Jenkins,* 242 N.C. 636, 89 S.E. 2d 242; Strong's N. C. Index, Vol. 1, Appeal and Error, § 22; and (3) the assignment of error as to the findings of fact is broadside. They do not point out specifically the alleged error. *Logan v. Sprinkle,* 256 N.C. 41, 123 S.E. 2d 209; *Merrell v. Jenkins, supra; Heath v. Manufacturing Co.,* 242 N.C. 215, 87 S.E. 2d 300; *Suits v. Insurance Co.,* 241 N.C. 483, 85 S.E. 2d 602; *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351.

Appellants have four other assignments of error, all based on their Exception #1, which is to the judgment. They have no other exception set forth in their assignments of error.

Therefore, appellants' appeal presents only this one question: Their general exception to the judgment of Judge Bundy brings here for review the question as to whether or not the findings of fact support his conclusions of law and judgment, and as to whether or not error of law appears on the face of the record proper. *Merrell v. Jenkins, supra; Columbus County v. Thompson,* 249 N.C. 607, 107 S.E. 2d 302; *Salisbury v. Barnhardt,* 249 N.C. 549, 107 S.E. 2d 297; *Logan v. Sprinkle, supra; Schloss v. Jamison,* 258 N.C. 271, 128 S.E. 2d 590. It is hornbook law that where no exceptions have been taken to the findings of fact, such findings are presumed to be supported by competent evidence and are binding on appeal. *Schloss v. Jamison, supra; Insurance Co. v. Trucking Co.,* 256 N.C. 721, 125 S.E. 2d 25; *Goldsboro v. R. R.,* 246 N.C. 101, 97 S.E. 2d 486.

The findings of fact of the referee confirmed by Judge Bundy and Judge Bundy's additional findings of fact are to this effect: Plaintiff rendered services for, and furnished materials to, Hope Dale, the owner of 26 lots and 26 houses situate on these lots in Hope Dale subdivision, Wake County, in installing plumbing and heating systems in each of these 26 houses, under a contract with Hope Dale that Hope Dale would pay plaintiff $1,145 for each house in which plaintiff installed a plumbing and heating system. This gave rise to a debtor-creditor relationship between plaintiff and Hope Dale. Indubitably, the installation of a plumbing and heating system in each one of these 26 houses increased the value of each house and the lot on which it is situate. After the installation of the plumbing and heating systems in each of the 26 houses, according to a stipulation by the parties here, Hope

Dale conveyed by deed these 26 lots and the 26 houses situate thereon to the individual defendants here. Hope Dale has made no payments to plaintiff for installing the plumbing and heating systems in each house situate on lots numbered 4, 35, 37, 38, 42, 43, 46, 72, 73, 74, 75, 76, 79, 80, 81, and 83. Hope Dale has made a payment of $700 to plaintiff for installing the plumbing and heating systems in each house situate on lots numbered 94, 95, 104,, 106, 113, 114, 115, 121, 124, and 125. Plaintiff properly filed in the office of the clerk of the superior court of Wake County notices of its liens for labor rendered for, and materials furnished to, Hope Dale in each of the 26 houses within six months after the completion of the work and the final furnishings of the materials in installing a plumbing and heating system in each of the 26 houses on the 26 lots, G.S. 44-38 and 44-39; *Assurance Society v. Basnight,* 234 N.C. 347, 67 S.E. 2d 390, and instituted the instant action to enforce its lien on each of the 26 lots and on each of the 26 houses situate thereon within six months from the date of the filing of the notice or claim of lien on each of the 26 lots and on each house situate thereon, G.S. 44-43 and 44-48 (4) ; *Assurance Society v. Basnight, supra.* The record apparently shows that all subsequent encumbrances and interested parties have been made parties except the receiver of Hope Dale. At least nothing in the record shows otherwise.

Upon these facts Judge Bundy in modifying and affirming the referee's report adjudicated in substance, that plaintiff recover from Hope Dale the unpaid amount due it for installing a plumbing and heating system in each of the 26 houses situate on the 26 lots, and that the unpaid amount due for the installation of the plumbing and heating system in each of the 26 houses situate on the 26 lots is a valid and subsisting lien against each one of the 26 lots, which lien is superior to the claims of all other persons to this action, and that upon the filing of the lien on each of the 26 houses and lots, plaintiff's claim relates back to the time when plaintiff, the lien claimant, began the performance of the work and the furnishing of materials in each of the 26 houses.

G.S. 44-1 provides in relevant part: "Every building built * * * or improved, together with the necessary lots on which such building is situated, * * * shall be subject to a lien for the payment of all debts contracted for work done on the same, or material furnished." G.S. 44-43 provides for an action to enforce the lien. G.S. 44-46 provides for an execution upon a judgment rendered in favor of the claimant of a lien.

Where a lien claimant files notice of a laborers' and materialmen's lien against a building and the lot on which it stands in the office of the clerk of the superior court in the county in which the property is

situate, for work done and materials furnished by him in building and improving the building under contract with the owner of the lot, within six months after the completion of the work and a final furnishing of the material, and commences an action to enforce the lien within six months from the date of filing the notice of the lien in the county where the lot is situate, the lien relates back to the time when the lien claimant began the performance of the work and the furnishing of the materials, and takes precedence by reason of such relationship back over an intervening recorded deed of trust made by the owner of the lot since then, or other liens created by the owner since then. The doctrine of relationship back has been established by uniform decisions of this Court and is also inherent in G.S. 44-1 granting such lien. *Assurance Society v. Basnight, supra; Horne-Wilson, Inc. v. Wiggins Bros., Inc.,* 203 N.C. 85, 164 S.E. 365; *King v. Elliott,* 197 N.C. 93, 147 S.E. 701; *Harris v. Cheshire,* 189 N.C. 219, 126 S.E. 593; *Dunavant v. R. R.,* 122 N.C. 999, 29 S.E. 837; *Pipe & Foundry Co. v. Howland,* 111 N.C. 615, 16 S.E. 857, 20 L.R.A. 743; *Burr v. Maultsby,* 99 N.C. 263, 6 S.E. 108, 6 Am. St. Rep. 517; *Chadbourn v. Williams,* 71 N.C. 444.

In North Carolina, and in other jurisdictions, a laborers' and materialmen's lien on property takes priority over all the property conveyances to purchasers for value and without notice subsequent to the time when labor and materials are furnished, provided notice of the lien is filed for record within the statutory time, and action to enforce the lien is instituted within the statutory time. *Burr v. Maultsby, supra; Pipe & Foundry Co. v. Howland, supra; Conlee v. Clark,* 14 Ind. App. 205, 42 N.E. 762, 56 Am. St. Rep. 298; *Glass v. Freeburg,* 50 Minn. 386, 52 N.W. 900, 16 L.R.A. 335; *Green v. Williams,* 92 Tenn. 220, 21 S.W. 520, 19 L.R.A. 478; *Thorn v. Barringer,* 73 W. Va. 618, 81 S.E. 846, Ann. Cas. 1916B, 625; 36 Am. Jur., Mechanics' Liens, § 190; 41 N.C.L.R. 185.

Plaintiff has acquired no lien under the judgment here on any of the property owned by Hope Dale at the time of the rendition of the judgment here, because such property, if any, owned by Hope Dale vested in the receiver prior to the rendition of the judgment here. *Surety Corp. v. Sharpe,* 236 N.C. 35, 72 S.E. 2d 109.

Appellants stoutly contend that the Agreed Statement of Account between plaintiff and Midland and Hope Dale on 3 August 1959, which is set forth verbatim above, and which was entered into after the 26 individual defendants had purchased their homes from Hope Dale, to the effect that payments by Midland and Hope Dale to plaintiff for the installation of plumbing and heating systems in houses on lots owned by them should be applied to the payment in full of the in-

stallation in the 30 houses first completed (except Lot 36), and $700 each should be applied to 10 of the houses owned by individual defendants here for such installation, and none should be applied in payment of such installation in 16 of the houses owned by individual defendants here, precludes the assertion by plaintiff of the liens against these 26 houses and lots. Appellants contend this amounted to a charging of the lots not released for services done and material supplied on the lots which were released. Appellants further contend that plaintiff waived its lien on 30 lots, and partially waived it on 21 more lots by crediting them with $700 each — only 10 of these 21 lots are involved here — and as a result has waived any right to claim a lien on the 26 lots here involved. This argument is untenable for reasons set forth below.

It is a well-settled principle of both the common and civil law, which seems to be universally applied, that where a debtor, who owes a number of debts to a creditor, makes a payment to the creditor, he has the right at the time of the payment to specify the debt or debts to which the payment will be applied, and if he fails to do so, the creditor may make the application. If the parties fail to make an application to a specific debt or debts, the duty to do so devolves upon the court. The rationale for the rule is that up to the time of payment the money is the property of the debtor, and being such may be applied as he sees fit. *Stone v. Rich,* 160 N.C. 161, 75 S.E. 1077, and the cases therein cited; *Baker v. Sharpe,* 205 N.C. 196, 170 S.E. 657; *Power Co. v. Clay County,* 213 N.C. 698, 197 S.E. 603; *Moore v. Parkerson,* 255 N.C. 342, 121 S.E. 2d 533; 40 Am. Jur., Payment, §§ 110, 111, 112, 113, 117, and 129; 70 C.J.S., Payments, § 50. This rule is applicable to payments made by an owner or contractor to one who might assert a mechanics', laborers' or materialmen's lien, unless the circumstances show a different intent. *Northern Virginia Sav. & L. Ass'n v. J. B. Kendall Co.,* 205 Va. 136, 135 S.E. 2d 178; *Bateson & Co. v. Baldwin Forging & Tool Co.,* 75 W. Va. 574, 84 S.E. 887, 891; *J. S. Schirm Co. of Orange County v. Rollingwood Homes Co.,* 56 Cal. 2d 789, 17 Cal. Rptr. 1, 366 P. 2d 444, 446, 448; 36 Am. Jur., Mechanics' Liens, § 227, pp. 145, 146; 57 C.J.S., Mechanics' Liens, § 248, p. 823.

This general rule as to application of payments is subject to the qualification, apparently adopted in a majority of the jurisdictions, that where money is paid by a contractor or the seller of property to a mechanic or materialman out of funds received by the contractor or seller of property from an owner or purchaser whose property is subject to a mechanics' or materialmen's lien, or both, and the purpose of the payment to the contractor or seller was to discharge the indebtedness against a specific house, the mechanic or materialman must

apply the payment to discharge the indebtedness if he had knowledge of the source and purpose of the payment. *Northern Virginia Sav. & L. Ass'n v. J. B. Kendall Co., supra; Herrman v. Daffin* (Mo. App.), 302 S.W. 2d 313, and the many authorities there cited; *Farr v. Weaver,* 84 W. Va. 182, 99 S.E. 395; 57 C.J.S., Mechanics' Liens, § 249; 70 C.J.S., Payment, § 64; 36 Am. Jur., Mechanics' Liens, §§ 227 and 228; 40 Am. Jur., Payment, § 123; Anno., 166 A.L.R. 641.

This qualification to the general rule has no application in the instant case for the following reasons: (1) The joint answer of the defendants has no allegation that *any money* paid by them or by the 26 individual defendants, or any one of them, to Hope Dale was paid by Hope Dale to plaintiff; (2) there is nothing in the findings of fact to indicate that any money paid by defendants, and especially by the 26 individual defendants, or any one of them, to Hope Dale was paid by Hope Dale to plaintiff; and (3) the Agreed Statement of Account between plaintiff and Midland and Hope Dale shows payments of 10 lots involved here, but it does not show that any of this money came from the defendants, and particularly from the 26 individual defendants here, or any one of them.

Appellants rely upon the case of *Weaver v. Harland Corporation,* 176 Va. 224, 10 S.E. 2d 547, 130 A.L.R. 417, and cases with somewhat similar facts from other jurisdictions. However, these cases are clearly distinguishable on their facts from the instant case, and do not support appellants' contentions. In the *Weaver* case, the Virginia Supreme Court of Appeals declared several mechanics' liens invalid. There the amount and value of the labor and materials furnished each house upon which a lien was claimed was impossible to determine because of the manner in which the accounts of the claimants were kept. The evidence showed that liens had been released upon the sale of lots with buildings thereon to individual purchasers, and it appears that the amount of the released liens had been transferred to the properties which the owners had not sold. Thus, liens were claimed on these properties in greater amounts than the value of the labor and materials actually furnished to enhance the value of the houses.

In the instant case, according to the findings of fact, the value of the labor done and materials furnished in installing a plumbing and heating system in each of the 26 houses here was $1,145. Liens in the amount of $1,145 are claimed on each of the 16 houses on which nothing has been paid for such installation, and in the amount of $445 on each of the 10 houses on each of which $700 has been paid by Hope Dale for such installation. Consequently, it plainly appears that liens were not claimed by plaintiff on any of the 26 houses here in an

amount greater than the value of the labor and materials actually furnished to enhance the value of each of the 26 houses here.

Under the facts shown by the record in the present case, plaintiff had the right on 3 August 1959 to apply the payments previously made to it by Midland and Hope Dale without any specification by Midland and Hope Dale as to the application of the payments to the debts owed by them to plaintiff, as it did in the Agreed Statement of Account between them. To hold plaintiff's liens invalid would permit appellants to take advantage of their failure to follow the prudent practice of requiring Hope Dale to furnish proof that it had obtained releases from laborers, mechanics, and materialmen for the specific houses they bought from it, before they paid the money to it for such houses. If Hope Dale by its principal stockholder, W. M. Newsom, or W. M. Newsom, perpetrated a legal wrong on appellants to the effect that all the mechanics', laborers', and materialmen's liens had been paid by Hope Dale on these houses when they had not been paid, they must seek redress from the doer of the legal wrong. The findings of fact support the crucial conclusions of law and they in turn support Judge Bundy's judgment, and no error of law appears on the face of the record proper. The conclusion we have reached finds support in the case of *Northern Virginia Sav. & L. Ass'n v. J. B. Kendall, Co., supra.*

All appellants' assignments of error are overruled. The judgment of Judge Bundy is

Affirmed.