# Richmond

NORTHERN VIRGINIA SAVINGS AND LOAN ASSOCIATION v. J. B. KENDALL COMPANY, ET AL.

CAREY WINSTON COMPANY v. J. B. KENDALL COMPANY, ET AL.

E. W. LONG AND SONS, INCORPORATED v. MOUNT VERNON PARK CORPORATION, ET AL.

March 9, 1964.

Record Nos. 5627, 5628, 5629.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

*Frank L. Ball* (*John D. K. Smoot*, on brief), for appellant, Northern Virginia Savings and Loan Association.

*John Alexander*, for appellant, Carey Winston Company.

*James J. Conroy, III*, for appellant, E. W. Long and Sons, Incorporated.

*Bankhead T. Davies, Hardee Chambliss, Jr.* and *Henry C. Mackall* (*Whitford W. Cheston; Maurice Friedman; Nathan L. Silberberg; Albert H. Grenadier; Bernard Cohen; Pickett, Keith & Mackall; Bendheim, Fagelson, Bragg & Giammittorio,* on brief), for appellees, J. B. Kendall Company, Et Al.

*Frank L. Ball, John Alexander, Henry C. Mackall, Hardee Chambliss, Jr.* and *Bankhead T. Davies* (*John D. K. Smoot,* on brief), for appellees, Mount Vernon Park Corporation, Et Al.

I'ANSON, J., delivered the opinion of the court.

Northern Virginia Savings & Loan Association (Northern Virginia), Carey Winston Company (Winston), and E. W. Long & Sons, Inc. (Long), separate appellants in these three appeals, and N. Litterio & Company, Inc. (Litterio), Hudson Supply & Equipment Corporation (Hudson), and seven other creditors of Mount Vernon Park Corporation (Mount Vernon), appellees herein, filed separate suits to enforce liens asserted by them against certain lots with houses thereon in a subdivision owned by Mount Vernon. All the suits were consolidated into one cause and referred to a commissioner to determine the validity of the alleged liens and to fix their priorities.

After conducting many *ore tenus* hearings and considering hundreds of pages of transcribed testimony and exhibits, the commissioner reported (1) that all the appellees furnishing labor and materials had perfected mechanics' liens, either as general contractors or subcontractors, against certain of Mount Vernon's properties; (2) that Northern Virginia was entitled to a priority over the liens of Litterio and Hudson for all construction money it advanced after the contract of July 15, 1957, (post) but it was not entitled to a priority over these appellees' liens for money advanced to Mount Vernon prior to that date; (3) that Winston had no priority over any of the appellees' mechanics' liens for construction funds it advanced to Mount Vernon; (4) that work on the houses owned by Mount Vernon was "otherwise terminated" on July 15, 1957, within the meaning of § 43-4, Code of 1950, 1953 Repl. Vol.; and (5) that the memoranda filed by Long on October 28, 1957, perfected mechanics' liens against Mount Vernon's properties, but that the memoranda filed on February 14, 1958, did not perfect valid liens because they were not filed within the sixty-day period required by Code § 43-4.

The chancellor entered a decree affirming the commissioner's report in all respects, except he disallowed the liens asserted by Long in the memoranda filed on October 28, 1957, because they were not filed within the time prescribed by Code § 43-4. From this decree we granted separate appeals to Northern Virginia (Record No. 5627), Winston (Record No. 5628), and Long (Record No. 5629).

## Record No. 5627

Northern Virginia contends that the chancellor erred in holding (1) that the contract of July 15, 1957, did not give it a priority over the liens of Litterio and Hudson for construction loans it advanced to Mount Vernon prior to the date of the contract; (2) that the appellees had perfected their liens either as general contractors or as subcontractors; (3) that there were sufficient funds due from Mount Vernon, the owner, to Glenn H. Hartman, Inc., general contractor, to satisfy appellees' liens if they were subcontractors; and (4) that the liens of appellees Litterio, Hudson, Jefferson Decorators and Westinghouse Electric Corporation were supported by accounts showing proper charges and credits.

## Record No. 5628

Winston relies on the same assignments of error as Northern Virginia, except it does not claim a priority over the liens of Litterio and Hudson under the contract of July 15, 1957, since it did not advance construction funds to Mount Vernon after that date. Hence, except for this question, we will consider Records Nos. 5627 and 5628 together.

## Record No. 5629

Appellant Long contends that the chancellor erred in holding that all work on the houses was "otherwise terminated" as of July 15, 1957, within the meaning of Code § 43-4; and that its memoranda filed on October 28, 1957, and February 14, 1958, did not perfect valid liens against Mount Vernon's properties because they were not timely filed.

## Facts Involved

The commissioner's findings of fact show that Mount Vernon was the owner of a tract of land in Fairfax county which it was develop-

ing as a residential subdivision. It contracted with Glenn H. Hartman, Inc., to construct dwelling houses on the lots on a cost-plus basis. Glenn H. Hartman was the principal owner of the two corporations and served as president and general manager of both of them. Construction money, evidenced by notes and secured by deeds of trust, was advanced to Mount Vernon by Northern Virginia and Winston, and a great number of houses were built and sold over a period of many months. All of the appellees and appellant Long furnished labor, materials, or both, for the construction of houses in the subdivision. Seven of these parties had contracts written on mimeographed forms, executed in the name of Mount Vernon and Glenn H. Hartman, Inc., by Glenn H. Hartman as president of both corporations. The other three had oral contracts with Glenn H. Hartman, who was authorized to bind both corporations.

In the spring of 1957 the financial condition of Mount Vernon and Glenn H. Hartman, Inc., was such that the mechanics and materialmen were not being paid, and work on the houses reached a standstill and was "otherwise terminated" as of July 15, 1957, with twenty-one of the houses left in various stages of construction.

The financial plight of Mount Vernon and Glenn H. Hartman, Inc., resulted in a contract, dated July 15, 1957, between Mount Vernon, Glenn H. Hartman, Inc., Litterio, Hudson, Long, and trustees under second, third and fourth deeds of trust on the properties. Northern Virginia and Winston were not parties to the contract. It was signed on behalf of Mount Vernon and Glenn H. Hartman, Inc., by Glenn H. Hartman as president of both corporations. Under the terms of the contract Litterio, Hudson and Long agreed to serve as trustees for the purpose of receiving funds to which Mount Vernon shall become entitled and as such they were to complete and sell the unfinished houses. Thus Mount Vernon and Glenn H. Hartman, Inc., were relieved of any obligation to complete the buildings.

The contract provides in part:

"2. The parties of the third part [Litterio, Hudson and Long] are to proceed with the completion of the houses * * * and they are authorized and directed to pay out of the funds received by them [from sale of the houses] * * *" in the following order of priority:

"(a) Payment of any bills incurred for the completion of the houses from and after the date of this agreement:

"(b) Payment of construction loans to the Northern Virginia

Building [Savings] and Loan Association or the Carey Winston Company upon the settlement of the sale of any house;

"(c) The balance of the funds to be held in trust by the title attorneys or title company."

Paragraph 3 provides that upon the settlement of the sale of any house, the liens of mechanics and materialmen shall be transferred to and attach to the proceeds of the sale.

As a result of the agreement, Northern Virginia advanced to the trustees approximately $35,000 of the $48,000 estimated by the trustees to be the amount necessary to complete the unfinished buildings.

Litterio, Hudson and Long were not successful in their endeavor, and shortly after they abandoned the trusteeship agreement the court, in December, 1957, appointed a receiver to take possession of the Mount Vernon properties, complete the unfinished buildings, and sell them.

Litterio and Hudson filed memoranda of mechanics' liens against the Mount Vernon properties about two months prior to the execution of the July 15, 1957, contract. However, Long split its claims and filed memoranda of mechanics' liens on October 28, 1957, and other memoranda on February 14, 1958, for the balance due.

All mechanics' lien claimants, except Long, filed memoranda of liens prior to July 15, 1957, or within sixty days thereafter, as general contractors or subcontractors, and some filed as both. At the time these memoranda were filed Mount Vernon was indebted to Glenn H. Hartman, Inc., in an amount sufficient to satisfy the lienors' claims.

The unfinished houses were completed and sold by the receiver and all liens on the properties were transferred to the funds held by him.

Here we must decide whether the report of the commissioner based on evidence heard *ore tenus* and approved by the chancellor's decree in all respects, except as to the validity of the Long liens claimed in memoranda filed on October 28, 1957, is supported by credible evidence and founded on correct principles of law, and whether the chancellor was correct in disallowing the liens asserted by Long under the October 28, 1957, memoranda because they were not perfected within sixty days from the time the work on the houses was "otherwise terminated."

We have repeatedly said that a commissioner's report based upon evidence taken in his presence, while not entitled to the weight

given the verdict of a jury on conflicting evidence, is entitled to great weight and it should not be disturbed unless the commissioner's findings are clearly unsupported by evidence or incorrect principles of law have been applied. *Surf Realty Corp.* v. *Standing*, 195 Va. 431, 435, 436, 78 S. E. 2d 901, 904; *Kramer Bros. Co.* v. *Powers*, 195 Va. 131, 134, 135, 77 S. E. 2d 468, 470; *Potts* v. *Mathieson Alkali Works*, 165 Va. 196, 218, 181 S. E. 521, 529, 530; *Leckie* v. *Lynchburg Trust, Etc., Bank*, 191 Va. 360, 364, 365, 60 S. E. 2d 923, 925; 16 Mich. Jur., Reference and Commissioners, §§ 33 and 38, pp. 29, 30, 31, 34, 35.

In Record No. 5627, Northern Virginia first argues that under the terms of the July 15th contract and other evidence it was given a priority over the liens of Litterio and Hudson for funds it advanced prior to, as well as after, the date of the contract.

It is a well-recognized principle that a contract should be construed as a whole, thereby gathering meaning from its entirety and not from particular words, phrases or clauses. *Southwest Virginia Hospitals* v. *Lipps*, 193 Va. 191, 205, 68 S. E. 2d 82; 17A C. J. S., Contracts, § 297, p. 107; 12 Am. Jur., Contracts, § 241, p. 772.

The various clauses in the July 15th contract show that its objectives were to complete the unfinished houses and sell them in order that the claims of all creditors might be salvaged, if possible. Those furnishing labor, materials and construction funds after that date were given priorities in the funds derived from the sale of the houses.

Paragraph 2 of the contract contemplates disbursement by Litterio, Hudson and Long of the funds "received by them" as trustees from the sale of the houses they were to finish. The priority given to Northern Virginia, which was not a party to the contract, under clause 2(b), when construed in the light of all the provisions of the contract and its objectives, relates only to funds advanced to the trustees after the date of the contract and the priority was to be paid out of moneys received by the trustees "upon the settlement of the sale of any house." Indeed, Northern Virginia in its petition filed in the court below, although not mentioning other moneys claimed under its deeds of trust liens, asked that it be given a priority for moneys advanced after the contract of July 15, 1957, which the court allowed.

The contract recited that Litterio and Hudson had filed their memoranda of liens before it was executed, and no language is used therein indicating any intention to subordinate these liens in favor of Northern Virginia. The record shows that it was more to the

advantage of Northern Virginia than to Litterio, Hudson and Long that the houses be completed and sold. The advances made to the trustees for the completion of the houses afforded Northern Virginia a means of salvaging a portion of the large sums of money it had already advanced to Mount Vernon.

Northern Virginia, which was not a party to the July 15, 1957, contract, presented some evidence tending to show that Litterio and Hudson had represented to Northern Virginia that if it would advance funds necessary to complete the houses they would subordinate their liens, but the commissioner correctly gave no weight to this testimony in the light of other evidence and the plain terms of the contract.

The evidence supports the chancellor's decree that Northern Virginia was not entitled to a priority over the liens of Litterio and Hudson for construction funds it advanced prior to the July 15, 1957, contract.

### *Records Nos. 5627 and 5628*

■ The contentions of Northern Virginia and Winston that all the appellees were subcontractors and they did not show that Mount Vernon owed Glenn H. Hartman, Inc., general contractor, sufficient money to satisfy their claims when the memoranda of liens were filed are not supported by the law and the evidence.

These appellants argue that there cannot be two general contractors for the same job. This argument ignores the plain language of § 43-1, Code of 1950, 1953 Repl. Vol., which defines the terms "general contractor" and "subcontractor." The section reads as follows:

"As used in this chapter, the term 'general contractor' shall include contractors, laborers, mechanics, and persons furnishing materials, who contract directly with the owner, and the term 'subcontractor' shall include all such contractors, laborers, mechanics, and persons furnishing materials, who do not contract with the owner but with the general contractor."

All of the appellees providing labor, materials, or both, had written or oral contracts with Mount Vernon and Glenn H. Hartman, Inc., through Glenn H. Hartman, who under the undisputed evidence was authorized and empowered to bind both corporations. Thus all appellees contracted directly with Mount Vernon, the owner, and under the statutory definition they were all general contractors.

But even if the appellees were subcontractors, their liens would not

be defeated because the evidence showed that there was sufficient money owed by the owner to Glenn H. Hartman, Inc., to satisfy their liens at the time their memoranda were filed and the liens were perfected.

■ Northern Virginia and Winston then argue that even if it be conceded that all the appellees were general contractors, their liens are not valid because Code § 43-4 requires them, in order to perfect their liens, to file their memoranda within sixty days from the time each claimant finished his specific work or the last date materials were supplied, rather than sixty days from the time the whole building was completed or the work thereon otherwise terminated. Here, too, these appellants ignore the plain language of § 43-4, which reads, in part, as follows:

*"Perfection of lien by general contractor; recordation and notice.—* A general contractor, in order to perfect the lien given by the preceding section, shall file at any time after the work is done and the material furnished by him and before the expiration of sixty days from the time such building * * * is completed, or the work thereon otherwise terminated * * *."

It clearly appears from the statute that the sixty-day period within which a general contractor must file his memorandum to perfect a lien begins to run from the time the entire building is completed or work thereon is otherwise terminated, and not necessarily from the time the general contractor has completed his specific contract to furnish labor or materials, or both. See *Hadrup v. Sale,* 201 Va. 421, 424, 425, 111 S. E. 2d 405, 407, 76 A.L.R.2d 1159; Burks Pleading and Practice, 4th ed., § 459, p. 891.

■ Northern Virginia and Winston say that the liens of Litterio, Hudson, Jefferson Decorators, and Westinghouse Electric Corporation should not be allowed because they kept general accounts instead of separate accounts for each job, and payments received by them were applied to the oldest account regardless of what job the funds were paid on.

They rely upon the case of *Weaver* v. *Harland Corporation,* 176 Va. 224, 10 S. E. 2d 547, 130 A.L.R. 417, and cases with similar facts from other jurisdictions. However, the cases cited are clearly distinguishable on their facts from the instant one and do not support these appellants' contentions.

In the *Weaver* case this Court declared several mechanics' liens invalid. There the amount and value of the labor and materials furnished each house upon which a lien was claimed was impossible

to determine because of the manner in which the accounts of the claimants were kept. The evidence showed that liens had been released upon the sale of lots with buildings thereon to individual purchasers, and it appears that the amount of the released liens had been transferred to the properties which the owners had not sold. Thus liens were claimed on these properties in greater amounts than the value of the labor and materials actually furnished to enhance the value of the houses.

Those facts are not present in the instant case. The accounts of Litterio, Hudson, Jefferson Decorators and Westinghouse Electric Corporation were kept in such a manner that no difficulty was presented in determining the labor and material supplied each house upon which a lien was claimed. Furthermore, there has not been a scintilla of proof that any of these appellees are claiming a lien in excess of the fair value of the labor or materials which were actually furnished the houses upon which these mechanics' liens are asserted and Northern Virginia and Winston make no such contention.

The general rule governing the application of payments is that a debtor has the right to specify the account to which the payment is to be applied, and if he fails to do so the creditor may make the application. If the parties fail to make an application to a specific account the law applies the payment to extinguishment of the earliest item. *Pope* v. *Transparent Ice Company*, 91 Va. 79, 81, 20 S. E. 940, 942; 40 Am. Jur., Payment, § 117, p. 796, § 129, p. 803, § 132, p. 806; 70 C. J. S., Payment, § 50, p. 255. This rule is applicable to payments made by an owner or contractor to one who might assert a mechanic's lien unless the circumstances show a different intent. *Bateson & Co.* v. *Baldwin Forging & Tool Co.*, 75 W. Va. 574, 84 S. E. 887, 891; *J. S. Schirm Co. of Orange County* v. *Rollingwood Homes Co.*, 56 Cal. 2d 789, 17 Cal. Rptr. 1, 366 P. 2d 444, 446, 448; 36 Am. Jur., Mechanics' Liens, § 227, pp. 145, 146; 57 C. J. S., Mechanics' Liens, § 248, p. 823.

Northern Virginia and Winston argue we should follow an exception to the above general rule: that where money is paid by a contractor to a mechanic or materialman out of funds received by the contractor from an owner whose property is subject to a mechanic's lien, and the purpose of the payment to the contractor was to discharge the indebtedness against a specific house, the mechanic or materialman must apply the payment to discharge the indebtedness if he had knowledge of the source and purpose of the payment. See *Herrman* v. *Daffin* (Mo. App.), 302 S. W. 2d 313, 314;

*Farr* v. *Weaver*, 84 W. Va. 182, 99 S. E. 395, 396, 397; 36 Am. Jur., Mechanics' Liens, § 228, p. 146; Anno., 166 A. L. R. 641.

The exception to the general rule has no application under the facts of this case. Here the appellees were creditors of Mount Vernon, the owner, and Glenn H. Hartman, Inc., who were constructing many houses in the subdivision, and except in isolated cases there was no direction or intention that the payments received by appellees be applied to the account of a specific house.

Litterio had written contracts with Mount Vernon and Glenn H. Hartman, Inc., for the brick and masonry work on all the houses in the subdivision at a stated price per house. As the work progressed, Glenn H. Hartman, who was acting for and had authority to bind both corporations, paid Litterio out of construction funds advanced by Northern Virginia and Winston directly to Mount Vernon without the lending institutions directing that the funds be applied to accounts of specific houses. On several such occasions Hartman did direct that certain funds be credited to the account of a specific building and this was done. But where no directions were given, the amount received was applied to the oldest account. Thus it may be inferred that Mount Vernon and Glenn H. Hartman, Inc., knew that it was the practice of Litterio to credit payments to the oldest account unless otherwise directed. Indeed, the procedure followed by Litterio, who had many separate accounts for work performed on houses in the subdivision, was normal and in accordance with good business practices.

Hudson's contract with Mount Vernon and Glenn H. Hartman, Inc., to supply all lumber and millwork for the houses in the subdivision, arose out of an oral agreement with Glenn H. Hartman. Separate accounts and delivery tickets were kept for materials supplied each house on which liens were filed. Before November 26, 1956, Hudson, like Litterio, applied payments to the oldest accounts except when otherwise directed. After that date the small payments received were applied to the accounts of specific houses, and the liens filed represented the balance due on each house.

Jefferson Decorators and Westinghouse Electric Corporation supplied labor and materials for the construction of the houses, and payments made to them by the owner were not directed to be applied to any specific house.

Under the facts of this case the mechanics' lienors had the right to apply the payments made to them to the oldest accounts and there-

by preserve their liens on the latest ones. Thus the appellants' arguments as to these four accounts are without merit.

To hold any of appellees' mechanics' liens invalid would, in effect, permit Northern Virginia and Winston to take advantage of their failure to direct the application of the funds advanced to Mount Vernon as well as their failure to follow the prudent practice of obtaining releases from the mechanics and materialmen for specific houses as payments were made. Clearly Northern Virginia and Winston, who could have controlled the application of the funds advanced to Mount Vernon and thereby protected their interests, should bear the loss rather than these appellees.

### Record No. 5629

Appellant Long argues that the chancellor erred in holding that work on the houses in the Mount Vernon subdivision had "otherwise terminated" as of July 15, 1957, within the meaning of Code § 43-4, and that the memoranda filed on October 28, 1957, and February 14, 1958, to perfect its liens were not timely filed. There is no merit in this argument.

A general contractor or a subcontractor must file a memorandum of his lien within sixty days "from the time such building * * * is completed or the work thereon otherwise terminated * * *." Code §§ 43-4 and 43-7.

The record shows that in the spring of 1957 Mount Vernon and Glenn H. Hartman, Inc., encountered financial difficulties so great that Northern Virginia and Winston ceased advancing construction funds. As a result the mechanics and materialmen were not paid, work slowed down, and by July 15, 1957, it had reached a standstill. There was testimony by Glenn H. Hartman and his material superintendent that work on the project was altogether terminated before July 15, 1957. It was impossible for Mount Vernon and Glenn H. Hartman, Inc., to proceed further because of the lack of funds. In any event, labor or materials were not furnished to Mount Vernon and Glenn H. Hartman, Inc., by Long or any of the other claimants under the original contracts after that date.

The trusteeship agreement of July 15, 1957, recites that work had been "halted" prior to its execution because of Mount Vernon's lack of funds with which to meet day to day expenses. By the terms of the agreement, Mount Vernon and Glenn H. Hartman, Inc., re-

linquished all rights in the properties and terminated all obligations to finish the construction of the houses.

The complete abdication of responsibilities by the owner of a subdivision who has encountered financial difficulties, in favor of a trusteeship composed of his principal creditors, is strong evidence of abandonment by the owner and termination of work on the project, much in the same way as the appointment of a receiver shows a termination of work by an insolvent owner. See *City of Bristol* v. *Bostwick*, 139 Tenn. 304, 202 S. W. 61, 64; *Feick* v. *Stephens*, 250 Fed. 185, 189 (6th Cir.), *cert. denied* 248 U. S. 562, 63 L. ed. 422, 39 S. Ct. 8 (1918).

Furthermore, Long, as a party to the trusteeship agreement, had actual knowledge that Mount Vernon and Glenn H. Hartman, Inc., intended to permanently abandon further work on the project because of their financial condition. It had actual knowledge of the cessation of work by all the mechanics and that the materialmen had ceased furnishing materials.

The case of *Hadrup* v. *Sale, supra,* relied on by Long for an interpretation of the language "otherwise terminated," had no application to the present case. There we held that work on a house under construction was not "otherwise terminated" by a mere sale. There was no evidence that work came to a standstill before the house was completed.

The evidence fully supports the commissioner's finding, which was confirmed by the chancellor's decree, that work on the houses in the Mount Vernon subdivision was "otherwise terminated" as of July 15, 1957.

Long did not file memoranda of its liens within sixty days after the work was "otherwise terminated," as required by Code § 43-4. The resumption of work by Long for the trustees under the trusteeship agreement or for the receiver subsequent to July 15, 1957, did not, in our opinion, revive its rights so as to enable it to file memoranda of liens against Mount Vernon more than sixty days after July 15, 1957. Thus, the liens asserted by Long were not properly perfected by the memoranda filed on October 28, 1957, and February 14, 1958, because they were not timely filed, and the chancellor was correct in holding them invalid.

For the reasons stated, the decree appealed from in Records Nos. 5627, 5628 and 5629 is

*Affirmed.*