## CIRCUIT COURT OF FAIRFAX COUNTY

Richard W. Farneth
and Pamela C. Farneth

v.

Windson Development Corp.

### Case No. (Law) 94952

September 10, 1990

## By JUDGE THOMAS A. FORTKORT

This matter is before the Court on the motion of defendant, Windson Development Corporation, for Summary Judgment. For the reasons set forth below, the defendant's motion is denied. Viewing the record in its current condition, the defendant has failed to meet its burden of establishing the absence of a genuine dispute as to any material fact.

## I. *Review of the Facts*

This suit was filed on January 11, 1990, by Richard W. Farneth and Pamela C. Farneth (hereafter "plaintiffs") after they had been unsuccessful in receiving a refund remaining in the amount of $6,527.50 from Windson Development Corporation (hereafter "defendant"). On December 3, 1988, plaintiffs entered into a contract with defendant whereby they agreed to purchase certain property known as Lot 390, Section 7, Heritage Woods Subdivision, Fairfax County, Virginia. The amount of $6,527.50 was paid to the defendant for structural extras to be installed in

the home for which plaintiffs had contracted to purchase from defendant.

The plaintiffs allege (1) that the deposit of $6,527.50 was paid as part of an addendum to the sales agreement entitled "Contract for Extras" and (2) that paragraph 4 of the sales agreement provides that the agreement is contingent upon the purchasers obtaining financing and (3) that in November, 1989, defendant notified plaintiffs that the contract had been declared null and void in accordance with paragraph 4 "Financing Contingency" and sent plaintiffs a refund check in the amount of $2,000.00.

The defendant alleges (1) that the "Contract for Extras" was clear and unambiguous and that under the contract, the defendant was required to construct a loft and other special-order items in the new home the plaintiffs were purchasing from defendant and (2) that the plaintiffs signed this "Contract for Extras" as a separate contract and understood that if the purchase of the property was not consummated for any reason, the deposit of $6,527.50 would not be refunded.

## II. *Opinion of the Court*

The Court finds that the underlying issue in this matter is whether the "Contract for Extras" entered into by the plaintiffs and defendant is separate from or integrated into the contract for purchase of the property. Determination of this issue bears upon whether the plaintiffs are entitled to a refund of the remaining money paid by them to the defendant.

As to this issue, the Court finds that the instruments used should be construed together and considered to constitute one transaction. In this case, the parties entered into a contract by means of more than one document which related to one business transaction, that of the purchase and sale of a house, and thus the documents should be interpreted together. *Turner & Co. v. Delaney*, 211 Va. 168, 176 S.E.2d 422 (1970); *also see Hampton Roads Shipping Ass'n v. International Longshoremen's Ass'n*, 597 F. Supp. 709 (E.D. Va. 1984): "Where several writings are connected by internal references to each other even if they were executed on different dates and not among all of the parties, they will constitute a single contract as long

as they involve the same subject matter and prove to be parts of the same contract." In this case, the language used in the document for "Extras" referred to the document as being a special provision attached to and made a part of the sales contract and further specified the lot number and subdivision name. Also, the document referred to structural extras the builder would provide in the house, which was the subject of the sales agreement. These internal references in the "Extras" document serve to significantly connect it to the sales agreement to the degree that the Court considers the entire transaction a single contract.

The Court also finds that, in that the entire transaction is a single contract, Paragraph 4 in the sales agreement which provides that the agreement is contingent upon the purchasers obtaining financing *and* the clause in the "Extras" document, which provides that if, for any reason, the purchase of the property is not consummated, the money would not be refunded, create at best inconsistency and ambiguity. When an ambiguity such as this occurs, the language of the contract should be construed against the defendant who drafted and submitted the contract. *See Wellmore Coal Co. v. Powel Const. Co., Inc.,* 600 F. Supp. 1042 (W.D. Va. 1984), and *Winn v. Aleda Const. Co., Inc.,* 227 Va. 304, 315 S.E.2d 193 (1984). Therefore, defendant's motion for Summary Judgment will not lie.

November 19, 1990

By JUDGE ROSEMARIE ANNUNZIATA

Plaintiffs, Richard W. Farneth and Pamela C. Farneth, husband and wife, filed suit against Windson Development Corporation, a Northern Virginia home builder, to recover certain monies paid pursuant to a real estate sales agreement entered into between the parties on December 3, 1988. Pursuant to the agreement, plaintiffs agreed to purchase property located in Fairfax County, Virginia, and paid a deposit of $2,000.00 upon signing the agreement. The refund of this amount, which is not at issue, was made contingent on the plaintiffs' failure to qualify for financing. Paragraph 4, Sales Agreement.

The plaintiffs also paid the defendant $6,527.50 for structural extras to be installed in the home for

which plaintiffs had contracted to purchase from defendant. This deposit was paid as part of an addendum to the sales agreement entitled "Contract for Extras" which provided:

> It is hereby agreed and understood that if the purchase of the subject property is not consummated for any reason, the money [for the extras] will not be refunded.

The sales agreement and the other related documents were signed by Mr. and Mrs. Farneth in Windson's sales office at Heritage Forest, in the presence of an employee of Windson, Kathy Verkoski, and a real estate agent, Martin Johnson, of Special Properties, Inc. During the December 3, 1988, meeting among Mr. and Mrs. Farneth, Mr. Johnson, and Ms. Verkoski, there was an extended discussion concerning the "Contract for Extras." In response to Mr. and Mrs. Farneth's expressed concerns about the language of the "Contract for Extras," relating to the expected treatment of their deposit for extra items in the event the sale was not consummated, Ms. Verkoski represented that refunds of the deposit for extra items were decided on a case-by-case basis. Plaintiffs testified that Ms. Verkoski assured them the amounts paid for the extra items would be returned to them, the worst case being a deferral of the refund until a new buyer for the house was found.

Windson completed construction on the new home on the property in accordance with the terms of the sales agreement and "Contract for Extras." Settlement under the terms of the sales agreement was scheduled for October 24, 1989. However, Mr. and Mrs. Farneth did not settle on the property because they did not qualify for financing.

By letter dated November 2, 1989, Windson notified Mr. and Mrs. Farneth that Windson was putting the property back on the market and sent Mr. and Mrs. Farneth a check for $2,000.00 as the full refund. Windson contended that the Farneths' refund was limited to that amount by paragraph 4 of the sales agreement. Defendant further contended the refund of the $6,577.50 deposit, made pursuant to the "Contract of Extras," was governed by the language in that document and was non-refundable.

On November 27, 1989, Windson resold the property to Mr. and Mrs. Michael J. Hagey and realized less from

the sale to Mr. and Mrs. Hagey than if Mr. and Mrs. Farneth had settled under the terms of the sales agreement. The November 27, 1989, letter itemized the losses incurred by Windson in the resale of the property and advised the Farneth's that, accordingly, there would be no refund of any of the $6,527.50 paid under the "Contract for Extras."

On September 10, 1990, by letter opinion of Judge Thomas A. Fortkort, the contract and its addenda, including the "Contract for Extras," were determined to constitute a single contract, to be interpreted together. Parol evidence was taken at the trial held before me on November 6, 1990, to clarify the ambiguities in the language of the contract, read as a whole, pertaining to refunds.

First, it is my conclusion that the provisions of this sales agreement violate § 11-2.3 of the Virginia Code (1989 & Supp. 1990). *See Harold and Leslie Frank v. Tipco Homes, Inc.*, 19 Va. Cir. 291 (1990). The provisions of the Farneth/Windson contract fail to require completed performance within two years of the execution of the contract. (See paragraph 9 specifically as well as the remaining provisions which fail to express any such requirement.) Accordingly, the plaintiffs' request for the return of their deposit in the amount of $6,527.50 should be granted, together with their deposit of $2,000.00.

Even in the absence of a violation of the statutory requirement for completed performance, under the facts of this case, the purchasers' request for refund of the entire deposit of their funds, including the amount of $6,527.50 should be granted, in light of the following construction of the relevant contract provisions.

It is a universal rule that the intent of the parties must be ascertained in the instrument as a whole and not from particular words, phrases, or clauses. *Northern Virginia Savings & Loan Assoc. v. J. B. Kendall Co.*, 205 Va. 136, 142 (1964). All clauses and provisions should, if possible, be construed to harmonize with one another and to serve the intention of the parties. The entire contract and each and all of its parts and provisions must be given meaning and effect, if it can be consistently and reasonably be done. Finally, the contract, uncertain in its terms, is construed most strongly against the party who drew the contract and selected the terms for whose

benefit they were inserted. *Ayres v. Harleysville Mut. Casualty Co.*, 172 Va. 383, 390 (1934); *Southern R.R. Co. v. Columbia Comprise Co.*, 280 F. 344 (4th Cir. 1922).

The parol evidence admitted establishes that neither party intended that the language found in the "Contract for Extras" was to be construed as absolutely precluding a refund of the deposit paid for extra items. This evidence must be considered together with the contract language itself regarding refunds to determine when the deposit was to be deemed forfeited.

There are two provisions in the contract which address refunds of monies paid by the purchasers: paragraph 4 "Financing Contingency" and paragraph 13 "Default." The deposit for extras is clearly referenced in the latter provision which states:

> If a Purchaser fails to make full and timely settlement or shall otherwise breach any of Purchaser's representations, warranties, or covenants contained in the Agreement, including without limitation, Purchaser's obligation to make application and obtain a loan commitment as provided in Paragraph 3 above, Seller may retain the deposit *and any amounts collected in connection with the items listed in Addendum # 1 as liquidated damages* and not as a penalty, in which event the parties shall be relieved of all further liability hereunder. (Emphasis added).

Since Addendum 1 incorporates the deposit paid for extra items, it is my conclusion that the parties intended this deposit as liquidated damages, to be retained by the seller only in the event of the purchasers' default.

The purchasers are not in default, and they are therefore entitled to the return of their deposit in the amount of $6,527.50. Judgment in that amount is therefore ordered.