## CIRCUIT COURT OF ORANGE COUNTY

Richard L. Potter
and Glenda S. Potter

     v.

James D. Ogg
and S. Kay Ogg

May 3, 1991

Case No. CH9000076

By JUDGE LLOYD C. SULLENBERGER

    Richard L. and Glenda S. Potter, who agreed to sell a house and lot at Lake of the Woods, Orange County (the property), have sued defendants, James D. and S. Kay Ogg, who agreed to buy the property, for specific performance.

    Following discovery, the Oggs sought summary judgment on the grounds that the written contract dated January 21, 1990 (the contract), was required to, but did not, comply with Va. Code § 11-2.3 and that the contract was required to, but did not, comply with Va. Code § 55-511.

    At oral argument, the Oggs' request for admissions to the Potters and their admissions were made part of the record. The parties stipulated that the court should consider plaintiffs' exhibits at the hearing, copies of request for property owners' association disclosure dated January 21, 1990, and receipt of disclosure dated April 21, 1990.

The court took the matter under advisement. It will address the two statutes separately.

### Va. Code Section 11-2.3

The Oggs assert they are entitled to summary judgment denying specific performance because the contract did not require completed performance within two years of its date, did not contain the notice provisions of Section 11-2.3, and was not recordable.

Va. Code § 11-2.3 provides, as here pertinent, that contracts for the sale of improved residential real estate which do not require completed performance within two years shall be voidable at the option of the buyer unless the contract shall be in recordable form, and a recordable copy shall be furnished the buyer, and the contract shall provide:

> This contract must be recorded in the general index of the clerk's office of the circuit court of ----- (city or county where land located) in order to protect the buyer from claims of subsequent purchasers of, or other persons obtaining an interest in this real estate, or claims of judgment creditors, if any, of the seller.

The contract is for the sale of improved residential real estate, does not contain the quoted language, and is not in recordable form. The issue then is whether the contract required completed performance within two years after its execution.

The contract, a printed real estate broker's form designed for sale of residential real estate, provides for settlement on or before April 15, 1990. Time is made of the essence. However, the contract provides if a longer time were required to secure title report and survey or to finance or process the loan, if applied for in accordance with the contract, the date of settlement would be extended "for sufficient time to effect these conditions."

Of the purchase price of $298,000.00, $223,000.00 was to be financed by a loan buyers would obtain, the contract being contingent on buyers obtaining financing.

The buyers agreed to make written loan application within five business days after the contract was accepted or sixty days prior to the settlement date, whichever was later. Buyers agreed if first financing was not approved to make "second application." The contract provided that if defects in title could be remedied by legal action within a reasonable time, the sellers might promptly proceed to cure the defect. A special term was that the contract was contingent on buyers' selling an existing home which was on the market. No provision permitted delay in settlement in order for the buyers to sell their home.

The court concludes that this contract required completed performance within two years from the date of execution. It required completed performance within fewer than three months. Possible extension of the settlement date for completion of financing or to clear title does not, in the view of this court, create a contract not requiring completed performance within two years.

No Virginia appellate decision addressing the statute has been found. The court has reviewed the trial court cases furnished by counsel: *Frank v. Tipco Homes, Inc.,* 19 Va. Cir. 291 (1990); *Farneth v. Windson Devel. Corp.,* 21 Va. Cir. 216 (1990); *Glenwood Const. Co., Inc. v. Drees Co., et al.,* 22 Va. Cir. 370 (1991).

Without commenting on whether this court agrees with the decisions of *Tipco* and *Windson Devel.,* each involves purchase of a lot from a developer on which the developer was to construct a dwelling for the buyers, an entirely different situation than in the case at bar, when one seeks to determine whether the contract requires completed performance within two years.

The facts in *Drees,* which found the statute did not apply, are likewise entirely different from the situation at bar. This court does note the legislative history of § 11-2.3 cited in *Drees.* This court agreed with the *Drees* court that ambiguity exists in the term "require completed performance within two years." The court notes that the study cited at pp. 7 and 8 of *Drees* recognized the risks to a buyer agreeing to purchase a dwelling under a contract to make monthly payments without receiving title until the purchase price was paid. These contracts for deeds or installment contracts apparently were the vice being addressed by the legislation.

The court, while not attempting to define the limits of the statute *as enacted*, concludes that, by its terms, it does not include the contract in the case at bar: for an existing dwelling house, for cash to seller at closing, with closing to be in fewer than three months, with time of the essence, modified only by reasonable extension to clear title or to complete financing.

### *Va. Code Section 55-511*

The house and lot in question, Lot 202, § 10, Lake of the Woods, is located in a development subject to the Virginia Property Owners' Association Act, Va. Code Title 55, Chapter 26, § 55-508 *et seq.* (the Act).

Section 55-511 requires a seller to insert in a contract for sale of his lot, in bold print or underlined, language disclosing that the lot is in a development subject to the Act, and that the Act requires the development's property owners' association to provide seller, within fourteen days of a written request and payment of a required fee, with a disclosure packet which seller, upon written request by purchaser, will request of the association and, upon receipt, provide to purchaser.

The statute further provides:

B. The failure to cause the disclosure required by subsection A to be inserted in the contract for sale or resale shall be grounds for the avoidance of the contract by the purchaser.

Except for knowing or willful misrepresentation, the purchaser's sole remedy against a seller or licensed real estate broker or sales person or attorney for failure to cause the disclosure required by subsection A to be inserted in the contract for sale or resale shall be avoidance of the contract.

The contract does not contain the required disclosures in bold print or underlined or otherwise.

The admissions and stipulations show that on January 21, 1990, the date of the contract and the date it was signed by sellers and buyers, the buyers executed a printed form bearing the name Freeman and Freeman Realty, Inc.,

one of the sales brokers, entitled "Purchaser's Request/ Waiver for Property Owners' Association Disclosure Packet," addressed to the Potters referring to the contract the buyers signed, checking a blank "1. Request for Disclosure Packet" and signing, which the Oggs did, requesting sellers to promptly obtain and furnish to buyers the disclosure packet provided under Code § 55-512. The form went on to enumerate what should be included in the packet, tracking Paragraphs 1 through 10 of § 55-512.

On April 21, 1990, after the date provided for settlement in the contract, the buyers acknowledged receipt of the packet on a printed form entitled "Purchaser's Acknowledgment of Receipt of Property Owners' Association Disclosure Packet."

Potters argue that, while the contract does not contain the required language, the Oggs were in no way prejudiced because they executed, on the same day the contract was executed, the request to the Potters to obtain and provide the disclosure packet, and, in fact, the Oggs later received the packet.

It is difficult for the court to see how the language of § 55-511 could be plainer or why a printed form contract for a residential real estate sale used in January, 1990, following the enactment of the Act, effective July 1, 1989, would not contain the necessary language. Section A of the statute imposes a duty on the sellers to include the language in the contract. Section B, providing for avoidance of the contract by purchaser, does not base avoidance on failure of seller to cause the disclosure to be inserted in the contract of sale *and* the failure of the purchaser to receive the disclosure packet.

Even the form the Oggs signed on the day of execution of the contract does not itself contain the language required by the statute to be in the contract. In fact, nothing in the form the Oggs signed tells them that the development's property owners' association must provide the seller with the disclosure packet within fourteen days of the sellers' written request and payment of the fee. Neither does the form contain any provision whereby the purchaser waives the right to have the language of the statute set forth in the contract.

While the result in this case may seem harsh, the language of the statute is plain and the purchaser's

remedy, if the language is not present, is plain -- avoidance of the contract. The court concludes that the Oggs had the right to avoid the contract under § 55-511, have avoided the contract, and the Potters are not entitled to specific performance.

Mr. Heilberg shall prepare a decree granting summary judgment to his clients, referring to this letter ruling, and dismissing the case.