## CIRCUIT COURT OF LOUDOUN COUNTY

J. B. Shotwell & Son
Excavating & Grading, Inc.

v.

Mercure Dulles, Inc., et al.

June 14, 1992

Case No. (Chancery) 13318

BY JUDGE THOMAS D. HORNE

On February 25, 1991, Complainant, J. B. Shotwell & Son Excavating & Grading, Inc. (hereinafter "Shotwell") filed with this Court its Bill of Complaint for the enforcement of certain mechanic's liens. It asserts that it entered into a contract with Parcon Construction Company, Inc., as general contractor, to furnish equipment and operators for the grading and earth removal work on Lots 4-A-1-A, 4-A-1-B, 6-A-1 and 7-A-1 of the Mercure Business Park properties. Lots 4-A-1-A and Lot 7-A-1 are owned by Mercure Dulles, Inc. Lot 4-A-1-B is owned by Mercure Land, Inc. NV Mercure Limited Partnership is the owner of Lot 6-A-1.

This case came before the Court on the Pleas in Bar of the Defendants, Mercure Dulles, Inc., and Mercure Land, Inc., to Counts II and III of the Amended Bill of Complaint filed by leave of Court on April 8, 1991. In Count II of the Amended Bill, Complainant articulates its claim for the enforcement of a mechanic's lien against Lots 4-A-1-A and 4-A-1-B. It seeks in Count III to enforce its lien only against Lot 4-A-1-B.

On August 29, 1990, Shotwell recorded its memorandum of mechanic's lien against Lots 4-A-1-A and 4-A-1-B. Named as owners in the memorandum were Potomac Kitchens/Mercure Limited Partnership (Lot 4-A-1-A) and Hermes Limited Partnership (Lot

4-A-1-B). The work by Shotwell was on an open account and consisted of dump truck rental and site work, including hauling. Also on August 29, 1990, Shotwell filed another memorandum of mechanic's lien against 4-A-1-B for "dump truck rental and site work, including hauling."

On December 21, 1990, Lots 4-A-1-A and 4-A-1-B were sold at a foreclosure sale to Mercure Dulles, Inc., and Mercure Land, Inc., respectively, as assignees of Chase Manhattan Bank, N.A. Pursuant to the terms of the foreclosure sale, title was conveyed to Mercure Dulles, Inc., and Mercure Land, Inc., by separate Trustee's Deeds dated January 22, 1991.

Mercure Land, Inc., was incorporated in the Commonwealth on December 6, 1990. Mercure Dulles, Inc., was incorporated on the same date. Their initial directors and incorporators are the same persons.

The original suit to enforce the mechanic's lien was filed on February 25, 1991. Mercure Land, Inc., was not named as a party to that action. Mercure Dulles, Inc., was served with process on March 5, 1991.

The evidence introduced in the Plea in Bar demonstrated that as of November 26, 1990, no construction was observed on the property. However, Parcon's construction trailer was observed on the property until late January, 1991.

Russell Gestl, president of Buchanan Construction Company, testified that his company contracted with Mercure Dulles, Inc., and Mercure Land, Inc., to complete construction of the project known as Mercure Business Park. On his visits of November 26, 1990, and January 17, 1991, he saw no work taking place on the property. While Buchanan contracted with various subcontractors who had worked on the project under Parcon, it specifically notified each of such subcontractors that, without waiving any rights for previous services, their work for Buchanan on the Mercure project was not to be considered a continuation of previous services under Parcon.

Defendants, Mercure Dulles, Inc., and Mercure Land, Inc., contend that as to Count II, the Amended Bill seeks to enforce an unapportioned blanket lien against Lots 4-A-1-A and 4-A-1-B. Both counsel have filed exhaustive memoranda of law on this point. While they rely upon the same authorities in support of their respective positions, they offer different conclusions.

Central to the debate between counsel is their differing interpretations of the holding in *Addington-Beaman Lumber Co., Inc. v. Lin-*

*coln Savings & Loan*, 241 Va. 436 (1991). Counsel for the Defendants would have the Court dismiss Count II because it states a claim on an open account which has not been properly apportioned between the two lots affected by the lien. Furthermore, he suggests that the instant lien does not arise from a single contract for the entire work to be performed on both properties as a whole without express provision for apportionment. Thus, it is not saved by the express terms of such a contract. *See, Sargeant v. Denby*, 87 Va. 206 (1890).

Counsel for the Complainant suggests that the holding in *Addington-Beaman* is supportive of its position in this case. That is, where apportionment is impossible or impractical, a failure to apportion is not fatal to the validity and enforcement of the lien. The Court disagrees with such an interpretation of the holding in the case. Addington-Beaman Lumber Co. was a supplier of lumber, roof trusses, etc., in connection with the construction of a townhouse development. These materials were supplied without apportionment on an open account. *There was no evidence of a contract between the material supplier and contractor that such materials were furnished for work on the separate lots as a whole.* (Emphasis added.) While the Court alluded to the finding of the commissioner that rejected the contention of the materials supplier that such apportionment "was impractical - if not impossible," this reference must be read with the express holding of the court. That is, the failure to apportion was fatal to the lien, and the mere existence of an open account contractual relationship did not establish, expressly or by implication, an agreement to supply materials for the project as a whole without reference to the individual lots. Conversely, the fact that the materials could be allocated was another factor to be considered in finding that no agreement existed which would lessen the responsibility to allocate. Thus, the Court found:

> [u]nder these circumstances where, as here, there were documents which can be identified with charges for individual units, those charges should have been aggregated for the filing of memoranda of lien on specific units. *Addington-Beaman* at 440.

This Court finds that its decision in this case must be governed by the express language of the Supreme Court that:

> [T]he duty to apportion in this case is not diminished by the fact that the parties dealt on an open account basis. As the

commissioner explicitly found, and contrary to the supplier's argument, the relationship here did not involve a *Sergeant* "single contract" for the entire work to be performed for a specified amount on the project as a whole, where there is no duty to apportion. Instead, there was a series of individual but related transactions reflected in the invoices, delivery tickets, and work orders. Under those circumstances, where as here, there were documents which can be identified with charges for individual units, those charges should have been aggregated for the filing of memoranda of lien on specific units. *Addington-Beaman* at 440.

The cases are legion concerning the duty of the mechanic's lienor to apportion. This duty arises because the:

[m]echanics lien law in Virginia will not permit a claimant to file an over-inclusive lien and then leave it to the trial court to excise any excess property. It is the mechanic's duty to place his lien upon the property on which he worked and no more. *Woodington Electric v. Lincoln Savings*, 238 Va. 623, 634 (1989).

A review of the evidence in this case does not reveal the existence of any agreement to provide the work specified on the two lots as a whole without apportionment. Accordingly, the Plea will be sustained, and Count II will be dismissed.

Even were the Court to find that apportionment was unnecessary, it must dismiss Counts II and III for a failure to join all parties necessary to these proceedings within the period of limitations for the enforcement of a mechanic's lien. Section 43–17, Code of Virginia, as amended; *Mendenhall v. Cooper*, 239 Va. 71 (1990).

The Court finds the instant case distinguishable from *Hadrup v. Sale*, 201 Va. 421 (1959), and controlled by the holding in *Loan Association v. Kendall Company*, 205 Va. 136 (1964).

Defendants contend that the instant action was not properly commenced within, "sixty days from the time the building, etc. . . . was completed or the work thereon otherwise terminated." As the Court observed in *Kendall*:

[t]he case of *Hadrup v. Sale, supra*, relied on by Long for an interpretation of the language "otherwise terminated" had no application to the present case. There we held that work on a house under construction was not "otherwise termi-

nated" by a mere sale. There was no evidence that work came to a standstill before the house was completed. *Loan Association, supra,* at 148.

In *Loan Association,* the owner was found to have abdicated his responsibilities in favor of a trusteeship composed of its principal creditors. Similarly, default, foreclosure, and abandonment of the project by the general contractor clearly demonstrate a "termination of work" sufficient to put lien creditors on notice as to the limitation on their right to commence litigation to enforce their liens. No work was in progress when a new general contractor took over the project. The description of the property about the time of the foreclosure sale conjures up images of abandonment and uncertainty. Accordingly, the sixty-day limitation began to run on the date of the foreclosure sale on December 21, 1990. The original Bill of Complaint was filed on February 25, 1991, sixty-six days after the work was otherwise terminated. Section 43–17, Code of Virginia, as amended.

Even were one to assume that the work did not terminate until late January, 1991, when Parcon's trailer was removed, Mercure Land, Inc., was not made a party to these proceedings until added by the filing of an amended bill of complaint by leave of Court on April 8, 1991. Mercure Land, Inc., as owner of parcel 4-A-1-B was a necessary party to the enforcement of complainant's lien against the property. Mercure Land was not joined as a party to the suit to enforce property until sixty-seven days after the removal of the trailer.

Contrary to the position taken by Shotwell, the court does not believe that the untimely joining of such a necessary party is saved by the provisions of § 8.01–6, Code of Virginia, as amended. The Court has attached a copy of a letter opinion in another case dated June 3, 1992, bearing upon this issue. *See, James T. Bush Construction Co., Inc. v. Patel,* 243 Va. 84 (1992). While counsel for the Complainant urges the Court to find, *inter alia,* that because of the inextricable intertwining of corporate structures, the Court should disregard individuality of ownership in favor of the savings provisions of the misnomer statute. The Court believes that a misnomer is not in issue in this case. This is a case of omission of a necessary party, not a mistake in identity. While the similarity of corporate names, structures, and relationships to the foreclosing lender may have offered a sticky wicket for the unwary, they do not give rise to a problem of identity of ownership.

Accordingly, the Pleas in Bar will be granted, and Counts II and III of the Amended Bill dismissed.