COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Elder and Humphreys
Argued at Alexandria, Virginia


SIDNEY EVERETT LOVELL, JR.
                                    MEMORANDUM OPINION* BY
v.    Record No. 1281-02-4          JUDGE ROBERT J. HUMPHREYS
                                         MARCH 18, 2003
MONICA McGUIRE


              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                       Joanne F. Alper, Judge

          Peter M. Fitzner (Matthews, Snider, Norton &
          Fitzner, on brief), for appellant.

          Monica M. McGuire, pro se.


     Sidney Everett Lovell, Jr. (father) appeals a decision of the

trial court finding him in contempt of court for his failure to

comply with a previously entered custody order, modifying the

custody order as it pertained to visitation, and awarding Monica

McGuire (mother) $1,543.53 in attorney's fees.  For the reasons

that follow, we affirm.  Under familiar principles, we review the

evidence in the light most favorable to mother, as the prevailing

party below.  Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232,

237 (1988).  Furthermore, the judgment of a trial court sitting in

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

equity, when based on evidence heard <u>ore</u> <u>tenus</u>, will not be disturbed on appeal unless plainly wrong or without evidence to support it.  <u>Carter v. Carter</u>, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982).

So viewed, the evidence here established that father and mother were married from 1991 to 1996.  The couple had one child in 1994.  The trial court issued a final custody order, pertaining to the custody of the child, on November 19, 1999.  The order provided for joint legal custody of the child, with primary physical custody to be held by mother.  Relevant provisions of the order stated as follows:

> I.  SCHOOL YEAR VISITATION
>
> A.  <u>Weekends</u>:  During the school year, [father] shall have weekend visitation with [child] three weekends per month.  This means that the months in which there are four weekends, [father] will have [child] for three weekends and [mother] will have [child] for one weekend.  In those months in which there are five weekends, [father] shall have three weekends and [mother] will have two weekends.  The month in which a weekend falls will be determined by the Friday on which the visitation commences.  For example, if the Friday is September 30th and Saturday is October 1st that weekend would be deemed to be a September weekend. <u>Weekend visitation shall commence on Friday after school and [father] shall return [child] to [mother's] residence on Sunday evening at 6:30 p.m.</u>

-

B. Holidays

1. Monday/Federal Holidays and School
Holidays

[Father] shall have [child] on all Monday
holidays except for one Monday holiday per
year, which [mother] shall, at her option,
have the right to select annually.  The
Monday holiday shall extend [father's]
regular weekend visitation until 6:30 p.m.
Monday following the regular weekend
visitation.  [Father] shall have [child] for
all federal holidays and for all teacher
work days and other regularly scheduled
school holidays, except as specifically
provided below.  School Holidays shall not
include days on which school is closed
because of inclement weather or other
emergency reason.  Except as provided
elsewhere in this order holiday visitation
shall be from the end of the school day
directly preceding the holiday until 6:30
p.m. on the last day of the holiday.

2. Spring Break

[Father] shall have [child] for spring break
every year.

(Emphasis added).

On April 10, 2002, mother filed an affidavit and petition
with the trial court contending that father had failed to comply
with the November 19, 1999 custody order, by failing to return the
child to her home by 6:30 p.m. on Easter Sunday, March 31, 2002.
That particular Sunday also happened to be the Sunday following
the child's spring break vacation.  Mother alleged that, contrary
to the terms of the custody order, father returned the child to
school on Monday, April 1, 2002 and requested that the trial court
issue a Rule to Show Cause to father, directing him to appear and

-

show cause why he should not be held in contempt for failing to comply with the terms of the order.

The trial court scheduled the hearing for April 19, 2002, and heard proffers of counsel on that date. Father contended that he had not failed to comply with the custody order because the order contained no language in the "Spring Break" provision pertaining to the return date or time for that particular visitation period. Mother argued that the custody order was clear in requiring father to return the child to her home on Sunday, March 31, 2002 at 6:30 p.m., regardless of the fact that the weekend visitation at that time fell at the end of father's spring break visitation with the child. Thus, mother requested that the trial court find father in contempt. In addition, mother asked the court to specifically provide in the custody order that the Easter holiday visitation period, which had previously been considered a normal weekend visitation period, "alternate" between mother and father "as a result of this." Mother stated, "I am not asking you to punish the child, I'm asking you to punish [father]. . . . I think we need to get stability back and it would be best for the child for [father] to understand that he must comply with the order."

After noting that Easter Sunday, March 31, 2002 was "neither a Monday holiday nor a school holiday," pursuant to the agreement, the court found father in contempt, stating:

> I think despite some of the discussions, I
> think the letter, both the letter and the
> spirit of the Court Order are clear that on

-

> Easter vacation on that weekend, the child
> was due home at 6:30 on Sunday and that
> [father] willfully violated that by not
> returning – there was simply no basis to,
> anywhere in this Order for him to keep [the
> child] through Monday. . . . Nothing even in
> what he's relying upon as what spring break
> is, because it just says on that Monday
> after Easter school is reopened.  That's all
> it says.  It doesn't say that it's spring
> break.  In fact, that uses the different
> wording.  The wording in the Order was
> spring break.

Accordingly, the trial court ordered father be sentenced to ten days in jail, with all ten days suspended for one year, on the condition that he maintain strict compliance with the terms of the custody order, and pay attorney's fees incurred in connection with the matter to mother, stating, "I'll make it very clear . . . spring break is defined by the Arlington County Schools as of Monday through Friday, the school days that are missed, not including the weekends either before or after."

In addition, the trial court ordered as follows:

> The Final Ruling is going to be that I am
> going to order that the parties . . .
> hereafter rather, alternate Easter weekend,
> so that from this point forward for next
> year, [mother] will have the weekend of
> Easter with Easter holiday beginning, as all
> weekends beginning with these parties on
> Friday and continuing through Sunday, and
> that will be continued year after, flipping
> over to [father] the year after that.  But
> the understanding is that that's not going
> to be counted as an additional weekend for
> her, it's just that on alternating years she
> will have the right to that weekend as an
> additional weekend to spend with the child.

-

On appeal, father first contends that the trial court erred in finding him in contempt and ordering attorney's fees to be paid to mother, because the November 19, 1999 custody order did not expressly require him to return the child on the Sunday following spring vacation, at 6:30 p.m. We first note that "[a] trial court 'has the authority to hold [an] offending party in contempt for acting in bad faith or for willful disobedience of its order.'" Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991) (quoting Carswell v. Masterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982)). However, "[a]s a general rule, 'before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977) (quoting Wood v. Goodson, 485 S.W.2d 213, 217 (Ark. 1972)). The Supreme Court of Virginia has held that "'[t]he process for contempt lies for disobedience of what is decreed, not for what may be decreed.'" Id. (quoting Taliaferro v. Horde's Adm'r., 22 Va. (1 Rand.) 242, 247 (1822)).

We find that the record here supports the trial court's determination that father willfully disobeyed the express terms of the November 19, 1999 custody order. Indeed, when a trial court applies the unambiguous language of an order, the sole issue on appeal is a question of law "which can readily be ascertained by

-

this court." Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).

Court orders are subject to the same rules of construction that apply to other written instruments. See generally Shultz v. Hansbrough, 76 Va. 817 (1882). Furthermore, it is a well-recognized principle that a court order, so viewed, "should be construed as a whole, thereby gathering meaning from its entirety and not from particular words, phrases or clauses." Northern Virginia Sav. & Loan Ass'n v. J.B. Kendall Co., 205 Va. 136, 142, 135 S.E.2d 178, 183 (1964). In the case at bar, the "Weekends" provision of the order very clearly states that "[w]eekend visitation shall commence on Friday after school and [father] shall return [the child] to [mother's] residence on Sunday evening at 6:30 p.m." The "Holidays" provision states that on any school holiday during which father has visitation, the "holiday visitation shall be from the end of the school day directly preceding the holiday until 6:30 p.m. on the last day of the holiday," "[e]xcept as otherwise provided elsewhere in [the] order." Although the provision pertaining to spring break stated only that father "shall have [the child] spring break every year," the provision, by its express language, does nothing to alter the time and place of return language as clearly provided for in the provisions relating to general weekend and school holiday visitation.

-

Accordingly, we find no abuse of discretion in the trial court's finding of contempt against father. Moreover, because "it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings," we find no error in the trial court's determination to award mother appropriate attorney's fees in relation to the prosecution of this matter. Arvin, Inc. v. Sony Corp. of America, 215 Va. 704, 706, 213 S.E.2d 753, 755 (1975).[1]

Father next raises a general contention that the trial court erred in its ruling by modifying the terms of the November 19, 1999 custody order, as they pertained to visitation. Without specifically referring to any such "modification," father argues that the trial court failed to make the requisite finding that the modifications made were based upon a change in circumstances, and contends that the trial court made the modifications merely in an effort to punish him for failing to comply with the custody order.

We have held that:

> [a] trial court may "revise and alter such decree concerning the care, custody and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require." Code

---

[1] In reaching this conclusion, we note that father has raised no argument concerning the nature of the contempt finding here at issue.

-

§ 20-108. In determining whether a change in custody is warranted, the trial court applies a two-part test: (1) whether there has been a change of circumstances since the most recent custody award; and (2) whether such a change would be in the best interests of the child.

Hughes v. Gentry, 18 Va. App. 318, 321-22, 443 S.E.2d 448, 450 (1994) (citation omitted). Although Code § 20-108 states that "[t]he intentional withholding of visitation of a child from the other parent without just cause may constitute a material change in circumstances justifying a change of custody in the discretion of the court," we have held that a court's authority to modify or revise a custody order may not be used merely to punish a parent. M.E.D. v. J.P.M., 3 Va. App. 391, 406, 350 S.E.2d 215, 225 (1986).

Here, the trial court clearly modified the November 19, 1999 custody order as it pertained to Easter visitation, by designating which parent would be entitled to visitation with the child during that particular weekend.[2] However, as stated above, such modifications are only appropriate if the court determines that the modifications are necessary based upon the

---

[2] Based upon our reading of the trial court's April 19, 2002 order, memorializing its findings on the Rule to Show Cause, it also appears that the trial court modified the custody order by adding limiting language to the custody order, defining the parameters of "Spring Break." However, the record demonstrates that father raised no objection to this "modification" below. Accordingly, we do not consider the issue further for purposes of this appeal. See Rule 5A:18.

-

changed circumstances of the parties.  Although the trial court did not expressly find a material change in circumstances, the record shows that father consistently disregarded the custody order and intentionally withheld and/or interfered with mother's time with the child.  Moreover, no evidence in the record demonstrates that the trial court took any action, beyond that of the contempt finding, to punish father for his conduct on this regard.  Therefore, pursuant to Code § 20-108, credible evidence supports an implicit finding of a material change in circumstances.  See Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986) (stating that "[w]hether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence").

In his prayer for relief, made to this Court on appeal, father requests "restitution" of the attorney fees awarded to mother below.  "An award or denial of attorney's fees is a matter committed to the sound discretion of the trial court." Head v. Head, 24 Va. App. 166, 181, 480 S.E.2d 780, 788 (1997).

> "We have said that 'the key to a proper award of counsel fees . . . [is] reasonableness under all the circumstances revealed by the record.'"  Poliquin v. Poliquin, 12 Va. App. 676, 682, 406 S.E.2d 401, 405 (1991) (quoting Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988)).  Applying this maxim to this case, we conclude that the trial judge did not err in the award of attorney's fees.

-

Alphin v. Alphin, 15 Va. App. 395, 406, 424 S.E.2d 572, 578 (1992). We find no abuse of the trial court's discretion and deny father's request.

Finally, mother requests costs and an additional sum of attorney's fees for matters relating to this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). In this context, and upon consideration of the entire record in this case, we hold that mother is not entitled to further costs or attorney's fees in the matter.

Based upon the above discussion, we affirm the judgment of the trial court.

Affirmed.

-